Thomas Whelan, executor, & another *vs.* Martin
McNally, executor.

Norfolk.     October 7, 1931. — December 3, 1931.

Present: Rugg, C.J., Crosby, Carroll, Sanderson, & Field, JJ.

*Will,* Waiver by widow. *Widow. Unsound Mind. Evidence,* Presumptions and burden of proof. *Probate Court,* Petition in equity: laches.

At the hearing of a petition in a probate court to have declared null and void an alleged waiver by the widow of a testator of her rights under his will, it appeared that the testator died on April 14, 1930, and that the widow resided in the family home until June 15 following, when she went to live with her brother, her sole presumptive heir at law; that three days later the waiver, bearing a date June 12, was filed; that the husband's will was allowed on June 23 and the widow died on June 26. The evidence, which was reported under G. L. c. 215, § 18, warranted findings by the judge that the widow was about eighty years of age; that she had marked arteriosclerosis, chronic myocarditis, sclerosis of the brain, and interstitial nephritis; that she was disoriented during the illness of her husband and that when his death occurred she did not realize that he had died; that on June 15, 1930, she was treated by her family physician; that on that day she was in a semi-conscious condition; and that on the same day she was removed to the home of her brother; and the judge concluded that her mentality was impaired and that at the time of signing the waiver of the provisions of her husband's will she did not realize the significance of her act. *Held,* that the conclusion was warranted.

The mere fact, appearing at the hearing above described, that a will purporting to have been executed by the widow on June 19, 1930, had been allowed, it not appearing that its allowance was contested on the ground of incapacity, was not controlling on the issue of her capacity to execute a valid waiver of the provisions of her husband's will on June 12.

Allegations in the petition above described that the widow was mentally and physically incompetent to waive the provisions of her husband's will and that she was unable to understand the nature and consequences of her acts were sufficient on demurrer to warrant the maintaining of the petition for relief sought, although the word "insanity" was not used.

The mere fact that the petition to have the waiver declared null and void in the circumstances above described was not filed until three months and nine days after the allowance of the will of the husband did not require as a matter of law a finding that the petition was barred by laches.

PETITION, filed in the Probate Court for the county of Norfolk on October 2, 1930, by the executor of the will of Daniel Hurley, late of Quincy, and Catherine M. Clare, legatee and remainderman thereunder, for the cancellation of a waiver of the provisions of the will, alleged to have been filed by the testator's widow. The respondent was the executor under the will of the widow.

The respondent demurred to the petition. The demurrer was heard by *McCoole*, J., and was overruled.

The judge then heard the petition on the merits, a stenographer having been appointed under G. L. c. 215, § 18, as amended.

It appeared that Daniel Hurley died on April 14, 1930; that on June 15, 1930, the widow went to live with the respondent, her sole presumptive heir at law; that three days later the waiver, bearing a date June 12, 1930, was filed with the register of probate. In the meantime, the petition for proof of the will of Daniel Hurley had been filed on May 23, 1930. That will was allowed on June 23, 1930. The widow died on June 26, 1930.

Other material facts and evidence are stated in the opinion.

By order of the judge, a final decree was entered declaring the widow's waiver null and void. The respondent appealed.

*F. D. Coffman*, (*S. P. Coffman* with him,) for the respondent.

*J. J. Cox*, (*M. A. Scanlon* with him,) for the petitioners.

SANDERSON, J. This is an appeal by the respondent, executor of the will of Bridget Hurley, from a decree overruling his demurrer and denying certain requested rulings, and from the entry of a decree declaring null and void a waiver of the will of Daniel Hurley filed by his widow, Bridget Hurley. By his will he left his estate to his widow for life and at her death to his niece, Catherine Clare. His widow continued to live in his home from his death until June 15, 1930, when at her request she was taken to the house of her brother where she remained until her death on June 26, 1930. On June 18, 1930, a paper, dated June 12, 1930, purporting to be a waiver of the provisions of her

late husband's will, was filed in the Probate Court. Testimony offered by the respondent tended to prove that Bridget Hurley executed a will on June 19, 1930, which was filed in the Probate Court July 1 and allowed on September 29, 1930.

In October, 1930, the petitioner, executor of the will of Daniel Hurley, joined with Catherine Clare in a petition in equity to have the waiver filed by Bridget Hurley declared null and void on the ground that she was physically and mentally incompetent to waive the provisions of her husband's will. The judge ruled that the petitioners to prevail must prove that Bridget Hurley was mentally unable to comprehend and understand that she had a right to elect to waive the provisions made for her under her husband's will at the time she signed the waiver and that the petitioners could not prevail unless they proved by a preponderance of the evidence that Bridget Hurley was insane on June 12, 1930, the date when she signed the waiver.

There was testimony from her family physician that when her husband died she did not seem to realize the fact; that in April and June, 1930, when the witness attended her, Mrs. Hurley was not capable of transacting ordinary business and not mentally capable of understanding the nature and consequences of her own acts; that on June 15, 1930, she did not have the mental capacity to transact any business that had to do either with her estate or with that of her husband. There was other testimony tending to prove that for the last year of her life she failed mentally, did not seem to remember anything, talked to herself in an incoherent manner, and showed a lack of understanding; that she had had a slight shock in 1929, and was suffering from diseases of the heart and other ailments.

The trial judge stated his findings, in part, as follows: "I find that said Bridget Hurley was about eighty years of age. She had marked arteriosclerosis, chronic myocarditis, sclerosis of the brain, and interstitial nephritis. She was disoriented during the illness of her husband and when his death occurred did not realize that he had passed on. On June 15, 1930, three days after she signed the

waiver of the provisions of the will, she was treated by her family physician. On that day she was in a semi-conscious condition. On the same day she was removed to the home of her brother, Martin McNally, at 24 Auburn Street, Charlestown. I find that she was of advanced age; that she was suffering from numerous ailments; that her ailments were of such a nature that her mentality was impaired and that at the time of signing the waiver of the provisions of her husband's will she did not realize the significance of her act."

There was evidence warranting the finding that the mentality of the deceased was impaired, and that at the time of signing the waiver of the provisions of her husband's will she did not realize the significance of her act. We cannot say that the judge was not warranted in believing the testimony tending to support the conclusion which he reached, and in not giving weight to the evidence tending to prove that she had sufficient mental capacity to waive the provisions of the will. Waiver is an intentional relinquishment of a known right. The fact that a will purporting to have been executed by her on June 19, 1930, had been allowed was not controlling on the issue of her capacity to execute a valid waiver of the provisions of her husband's will. It does not appear that any contest was made on the question of her sanity in that case, and it may well be that a person having capacity to make a will on one day might not have capacity to waive the provisions of a will on another. See G. L. c. 191, § 1, and G. L. c. 201, § 45.

The bill sufficiently set forth grounds for equitable relief. It was not essential to its maintenance that the word "insanity" should be used. The allegation that Bridget Hurley was mentally and physically incompetent to waive the provisions of her husband's will and that she was unable to understand the nature and consequences of her acts was enough. The findings are sufficient to establish such insanity that no valid waiver of her husband's will could be made unless by a guardian acting under G. L. c. 201, § 45, as amended by St. 1924, c. 8. The judge found specifically that when she signed the waiver she did not realize

the significance of her act.  See *Sutcliffe* v. *Heatley,* 232 Mass. 231.  From the rulings given he must also have found that Bridget Hurley was mentally unable to comprehend and understand that she had a right to elect to waive her husband's will at the time she signed the waiver and that she was insane on that date.

One of the petitioners testified that he did not know of the alleged waiver until the first of July.  Only three days elapsed between the date of allowance of Mr. Hurley's will and the date of Mrs. Hurley's death.  The petition to declare the alleged waiver null and void was filed October 2, 1930.  Neither upon the facts alleged nor upon those found could this court say that the petitioners had lost their right to maintain the suit by reason of laches.

The question whether Bridget Hurley was fully advised by counsel respecting her rights when she signed the waiver was for the trial judge to decide.

For reasons sufficiently stated the order overruling the demurrer was right.

We find no error in any of the rulings or refusals to rule and we cannot say that the findings of the trial judge were clearly wrong.  Upon those findings Bridget Hurley did not have sufficient mental capacity to waive the provisions of her husband's will.

*Decree affirmed.*