*In re* DELLOW'S ESTATE.

ANDERSON *v.* DELLOW.

1. Appeal and Error — Directed Verdict — Evidence — Widow's Election—Mental Competency.

On appeal from directed verdict and judgment for heirs of widow who had exercised her right to take her statutory inheritance and not to take under her late husband's will, presence of competent testimony supporting claim of plaintiff that widow was mentally incompetent to make election at time it was made would render such directed verdict erroneous (3 Comp. Laws 1929, §§ 15564, 15565).

2. Wills—Widow's Election—Mental Competency—Evidence.

In proceeding to determine validity of widow's election to take her statutory inheritance and not to take under her late husband's will, it was competent to show what her mental condition was within a reasonable period both prior and subsequent to the exact date on which she made the election (3 Comp. Laws 1929, §§ 15564, 15565).

3. Appeal and Error—Directed Verdict—Evidence.

On appeal from judgment on directed verdict for defendants, testimony offered by plaintiff must be accepted as true.

4. Wills—Widow's Election — Mental Competency — Question for Jury.

Evidence presented in circuit court on appeal from probate court on issue of widow's competency to make election to take her statutory inheritance and not to take under her late husband's will *held*, sufficient to present such issue for determination by the jury (3 Comp. Laws 1929, §§ 15564, 15565).

5. Same—Widow's Election—Mental Competency.

A widow who is mentally incompetent cannot make a valid election to take statutory inheritance rather than to take under her husband's will (3 Comp. Laws 1929, §§ 15564, 15565).

6. SAME—WIDOW'S ELECTION—EVIDENCE OF EXTENT, CHARACTER AND
CONDITION OF ESTATE.
    On appeal in circuit court from decision as to widow's com-
    petency to elect to take her statutory inheritance instead of
    under the will, party, claiming her to have been incompetent
    to make such election, had right to show by competent tes-
    timony the extent, the character and condition of the estate
    as to which the election was made since such matter had a
    bearing upon the determination of whether the widow was
    mentally capable of making a valid election (3 Comp. Laws
    1929, §§ 15564, 15565).

Appeal from St. Clair; Robertson (William), J.
Submitted June 9, 1938. (Docket No. 49, Calendar
No. 40,091.) Decided October 5, 1938.

In the matter of the estate of John Dellow, de-
ceased. Petition by Catherine Dellow, widow, to
take statutory inheritance and waive provisions in
will of deceased. Petition by Jessie G. Anderson to
set aside widow's election. From order of probate
court denying petition to set aside widow's election,
Jessie G. Anderson appealed to circuit court. Di-
rected verdict and judgment for defendant heirs.
Plaintiff Jessie G. Anderson appeals. Reversed and
a new trial granted.

*George C. Brown* and *Arch M. Black,* for plaintiff.

*David A. Fitzgibbon* and *Thomas J. Mahon* (*Octa-
vio Perez-Guerra,* of counsel), for defendants.

NORTH, J. On January 22, 1936, Catherine Dellow
elected to take her statutory inheritance * in the es-
tate of her then recently deceased husband, John
Dellow, instead of accepting the provision made for
her in his will. These parties had no children. The

---

    * See 3 Comp. Laws 1929, §§ 15564, 15565 (Stat. Ann. §§ 27.2664,
27.2665).—REPORTER.

testator left a substantial estate. The widow died October 15, 1936. About three months thereafter an heir and legatee of John Dellow filed a petition to set aside the widow's election on the ground that at the time of such election the widow was mentally incompetent. On appeal to the circuit court from decision in the probate court there was trial by jury on the issue of the widow's mental competency at the time she made her election. At the conclusion of the testimony submitted by each of the parties defendants made the following motion:

"Now come the appellees (defendants) and move the court to dismiss the appeal on the ground that appellant failed to produce evidence to show that Catherine Dellow was mentally incompetent on the day she signed her widow's election."

The trial judge granted the motion by directing the jury to find in favor of the defendants, *i. e.*, the heirs of Catherine Dellow, deceased, and the administrator of her estate. In so directing the jury, the trial judge said:

"Before the claimant, Jessie Anderson, can recover she must satisfy you by a preponderance of the evidence that Catherine Dellow did not at the time of signing and making the claimed election in this case have sufficient mentality to understand the election and know what she was doing. As I said to you before I don't think she has met the burden of proof."

Decision on this appeal turns upon whether there was any competent testimony supporting plaintiff's claim that Catherine Dellow was mentally incompetent at the time she made her election to take under the statute. If there is such testimony the ruling of the trial judge in directing a verdict was obviously erroneous.

We will note but briefly testimony offered by plaintiff in support of her contention that Catherine Dellow was mentally incompetent at the time she made her election. However, before so doing it is well to recall to mind that notwithstanding the test of validity of the widow's election is her mental capacity *at that time,* still as bearing upon this issue it was competent to show what her mental condition was within a reasonable period both prior and subsequent to the exact date on which the widow made her election. *Harring* v. *Allen,* 25 Mich. 505; *Spencer* v. *Terry's Estate,* 133 Mich. 39; *Roberts* v. *Bidwell,* 136 Mich. 191; *O'Dell* v. *Goff,* 149 Mich. 152 (10 L. R. A. [N. S.] 989, 119 Am. St. Rep. 662). Accepting as true, which we must on this appeal from judgment on directed verdict, the testimony offered by plaintiff tending to establish the widow's incompetency at the date she made her election, the following facts appear in this record: For some years prior to Mr. Dellow's death he and his wife resided in Port Huron, Michigan. Apparently there were no other members of their household. Formerly Mrs. Dellow was said to appear to be a normal woman who took good care of her house, was intelligent, able to discuss matters of common interest, went to church and also went about town unaccompanied; but during the three years next preceding Mr. Dellow's death Mrs. Dellow did not go out from her home, her household was in "terrible condition," she could not carry on a conversation, but instead would shift from one topic to another, that she did not during this period discuss current events at least with the witness who was a close neighbor, and that Mrs. Dellow when about two blocks from her residence "got turned around * * * and then she couldn't find her way back" to her home. The wit-

ness Mabel Elliott testified that the condition of Mrs. Dellow as above indicated continued from 1933 until the summer of 1935 when Mrs. Dellow was taken from her home in Port Huron to reside with her sister in Detroit. Another witness, Sarah Lucas, did washings for Mr. and Mrs. Dellow, and this witness testified that at a time when the Dellow washing was on the line in the neighboring yard of the witness, Mrs. Dellow pointed to the washing and declared someone had stolen it. This witness also testified that Mrs. Dellow carried a stick and kept it in bed with her because she claimed a woman was bothering her and that other people bothered her at night. On several occasions this witness found Mrs. Dellow in bed with her clothes and shoes on; and on one occasion the witness smelled gas in the Dellow house, which was explained by Mr. Dellow by saying he forgot to turn it off before he went down to the store, but there is other testimony from which it might be inferred that Mrs. Dellow attempted suicide in this manner. Another witness who lived next door to the Dellows from 1932 to 1936 gave testimony of a character similar at least in part to that above noted and further testified that on one occasion Mrs. Dellow said to the witness that somebody had taken Mrs. Dellow's petticoats, had worn them, gotten them dirty and brought them back and threw them in the house; also that somebody took Mrs. Dellow's false teeth out of her mouth, evidently meaning that she thought somebody had stolen her false teeth; and this witness testified that Mrs. Dellow would tell her something and then repeat the same thing over again. Also this witness testified that she found Mrs. Dellow in bed on two occasions dressed and with her shoes on, and at another time found her with "her feet hanging up on the bed and she was

fully dressed, and she had these two big clubs.'' On another occasion Mrs. Dellow accused this witness of taking Mrs. Dellow's husband away, and Mrs. Dellow said she believed somebody was going to take Mr. Dellow away in a car, and after Mr. Dellow's death the widow told witness somebody had killed him; all this being without any disclosed foundation in fact. Another witness testified that during the latter part of Mrs. Dellow's residence in Port Huron ''she was eternally trying to cook, and half the time it was not even on the fire. * * * She would say the neighbors were always coming after her, they were always going to get her.'' And that she said of persons passing by her residence that ''they wanted to cut their head off and sew it on her.'' Another witness who for 12 or 13 years had lived as a neighbor to Mrs. Dellow testified that the latter finally ''got so she couldn't converse intelligently.'' An employee of the undertaker who had charge of Mr. Dellow's funeral told about seeing the widow in attendance, detailed her conduct, and said: ''She seemed she didn't know what it was all about.''

The widow executed her election to take under the statute on the day of her husband's funeral. An attempt was made on that day to return or give to her a bank book and some bank stock which belonged to her but the party delivering the same wanted a receipt. Mrs. Dellow would not sign the receipt in this simple transaction because, as she explained, an attorney had told her not to sign anything. However, after consulting with this advisor she did sign the receipt; but in doing so she had to be told of the letters in her name one after another. In this particular the gist of the record is that after being told where to sign another person present put her hand on Mrs. Dellow's wrist and Mrs. Dellow said: ''What

will I write; well, 'K' and she would repeat it and she would make a 'K,' and then 'a,' and she wrote Katherine Dellow on there (the receipt) and spelled it all out that slow and they had their hands on her wrist and she signed it." The significance of this item of testimony has to be determined in the light of defendants' claim that at this time Mrs. Dellow was an unusually intelligent woman.

It may be admitted that the opposing parties in this litigation offered testimony which, if believed, was abundantly sufficient to establish the mental competency of Mrs. Dellow at the time she made her election; but notwithstanding this, in view of the testimony in this record of the character hereinbefore noted, clearly a question of fact was presented as to the mental competency of Mrs. Dellow on the date she made her election. A person who is mentally incompetent cannot make a valid election in a case of this character. 69 C. J. p. 1109, § 2374; 32 C. J. p. 749, § 544; *McCartney* v. *Jacobs,* 288 Ill. 568 (123 N. E. 557, 4 A. L. R. 1120); *Young* v. *Boardman,* 97 Mo. 181 (10 S. W. 48); *Penhallow* v. *Kimball,* 61 N. H. 596; *Whelan* v. *McNally,* 277 Mass. 391 (178 N. E. 741).

"Where a wife is insane or incompetent, she does not lose the right of election but it may remain in abeyance until her restoration to competency. During her incompetency, election cannot be made by her guardian alone but may be made by him only upon authority of the court having charge of her. *In re Estate of Andrews,* 92 Mich. 449 (17 L. R. A. 296)." *Vanderlinde* v. *Bankers Trust Co. of Muskegon,* 270 Mich. 599.

Because the case must be remanded for a new trial it may be noted that within proper limitations the plaintiff had the right to show by competent testi-

mony the extent, the character and the condition of
the estate as to which the election was made, because
this was a phase of the case which had a bearing
upon the determination of whether Mrs. Dellow was
mentally capable of making a valid election. We
note the above because of appellant's complaint of
an adverse ruling of this character.

Consideration of other questions raised in appellant's brief is not necessary to decision and they are
not such as will likely arise upon retrial. The judgment entered in the lower court is reversed and a
new trial granted. Costs of this appeal to appellant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER,
CHANDLER, and McALLISTER, JJ., concurred. BUTZEL,
J., took no part in this decision.