**HELVERING, Commissioner of Internal Revenue, v. McCORMACK.**

**McCORMACK v. HELVERING, Commissioner of Internal Revenue.**

No. 8.

Circuit Court of Appeals, Second Circuit.
April 29, 1943.

A. Int.Rev.Acts, page 580, which took effect on June 6th of that year. Each trust was the same except that one was for the taxpayer's daughter, aged eleven, and the other, for his son, aged seven. The property transferred was concededly a gift in some year: the parties differ only as to the year in which it was made, and how much it was. The Commissioner maintained, and the Tax Court held, that it was made in 1936; the taxpayer argues that it was made in 1931.

Each trust was to last for five years, but would be cut short by the death of either the trustee—the taxpayer—or the beneficiary—the child—before the term expired. We need consider only the trust for the daughter. The trustee was to "apply to the use of" the child "so much of the net income * * * as in the sole and absolute discretion of the trustee * * * may be necessary and proper for the maintenance, education and well being" of the child, "and shall accumulate the balance of such net income, if any, for the benefit" of the child. "The discretion herein given * * * shall be subject to no other control than that of the judgment of the Trustee, and neither" the child "nor any other person on her behalf, or otherwise, shall have any * * * power to control the exercise of said Trustee's discretion, or to compel him to make any application * * * other than that which" he "may decide upon." The trustee was given power to use the principal, "if the net income and accumulations thereof are insufficient for the needs" of the child; also to pay to his wife income or principal for the use of the child. "Upon the termination of this trust, if the same does not terminate by reason of the death" of the child, "all accumulations, if any, shall be held by her surviving parents or parent, for, and when she reaches the age of twenty-one years, be paid over to" the child. "Upon said termination of this trust, the principal thereof, as then constituted" was to pass back to the taxpayer, or to his estate, if he was then dead.

The child and the trustee both outlived the five years and the trustee made only one payment for the child's "maintenance, education and well-being": $35,000 paid to his wife on December 19, 1932. He testified that he did not expect this to be used for the child's maintenance in the year in which it was given, but that the two payments of $35,000 each "would amply

Milton J. Levitt, of New York City, for taxpayer.

Bernard Chertcoff, of Washington, D. C., for Commissioner.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal involves a gift tax for the year 1936 upon two trusts set up by the taxpayer on November 30, 1931, before any gift tax had been imposed under §§ 501 and 502 of the Revenue Act of 1932, 26 U.S.C.

provide for the children for maybe the next ten years." There was no evidence of the amount necessary for the child's maintenance in accordance with the family income and style of living. The res was made up of shares of stock in two corporations, and the income varied greatly; it was over $72,000 in 1932 and less than $2700 in 1936: the total for the five years was more than $143,000, out of which the accumulations were $98,000. The shares were returned to the taxpayer when the trust ended on November 30, 1936.

The judge of the Tax Court interpreted the deeds of trust as suspending the child's right to the accumulations until the "termination of this trust"; he read the language quoted above to mean that if the child died during the five years—living the trustee—the accumulations would pass to the taxpayer. He therefore concluded that there had never been any completed gift until November 30, 1936, when the devolution of the accumulations was finally determined; and that for that reason the gift was made in that year. For a second, and alternative, reason he held that the power reserved to the trustee to use any part of the income for the maintenance of the child, left the amount of the accumulations undetermined until the end of the trust. This was particularly true because, if the trustee accumulated income in one year, he had the power to spend it for the child's maintenance in later years, should occasion demand—as for example, in case the income fell very low as it did in 1935 and 1936, or in case the child fell ill, or required other extraordinary expenditures.

We cannot agree as to the first ground. Section 16 of the New York Personal Property Law, Consol.Laws N.Y. c. 41 (which was apparently not brought to the attention of the Tax Court) forbids the accumulation of any income except during the minority of the person for whose benefit it is accumulated; and any accumulation which might come to the taxpayer upon the child's death, would not have been accumulated during the taxpayer's minority. If the trust deed must be construed as the Tax Court construed it—which is not free from doubt—this provision was invalid; but, since it was imposed upon an outright gift of the income to the child, it is to be construed as a condition subsequent, and can fall out without affecting the principal gift. It results that if the child had died during the trust and so ended it, the accumulated income would have passed to her administrator and would not have reverted to the taxpayer. This contingency did not therefore suspend any gift until 1936.

We in part agree with the Tax Court as to the other ground. Had such a deed of trust been executed after the gift tax was imposed, but without any provision allowing the trustee to divert the income to the child's maintenance, a tax could lawfully have been ascertained and imposed by appraising the present value of the prospective income, discounted by the actuarial chances that either the trustee or the child might die during the term. Code of Federal Regulations Book I, Vol. 7, p. 763 (§ 85.19 of Title 26). Such a gift is not treated as a series of gifts as the income comes in,—but as a single gift, made when the deed is executed, the future income being estimated by the best means available. If no evidence is available, four percent is assumed to be the return. Since the deed at bar was executed before June 6, 1932, it was not possible to tax the gift on that basis, nor did the Tax Court try, or find it necessary, to do so. It taxed all the accumulations left at the expiry of the term, because, as we have said, it interpreted the deed as allowing the trustee to use them in the last year for the child's maintenance. From that premise it concluded that any gift was suspended until then and that then a gift was made which included them all. We agree that, insofar as the trustee had power during 1936 to withdraw the accumulations and refrained from doing so, he at that time made a gift to the child. Our only difference with the Tax Court is as to what sums he could have withdrawn but did not. We think that the measure of his powers in 1936 was to recoup himself for any sums which he had spent in earlier years; and to set aside enough to provide a similar allowance for the remainder of her minority. We do not think that it makes any difference in the result whether what he had power to spend was more than what, as father, he was bound to provide; the excess could not itself have been a gift, for the trust in giving him power to "apply" the income to her "maintenance, education and well-being" did not give him power to make gifts.

The trust had plainly a double purpose. The prospective income was much more than enough for the child's maintenance; and the intention was not

only to provide for that, but to accumulate the residue as an investment. First, as to whether the period of maintenance was limited to the term, or covered the child's minority. The deed is silent, but when the trustee paid the child's mother $35,000 on December 19, 1932, he acted on the supposition that he might set aside a fund for the whole of her minority; nothing contradicted that interpretation, and it was an entirely reasonable assumption. Moreover, if it had not been, the payment would have been a conversion of the fund, for nobody suggests that $35,000 was necessary to maintain a little girl of twelve for only four years. In accordance with well recognized canons of construction, we should give weight to such an interpretation by the parties; and we should also, so far as possible, avoid an interpretation which would result in imputing malfeasance to the trustee. Next, as to the amount which the trustee might use for maintenance. It is true that, as the child's father, his common-law duty was no more than to provide her with "necessaries"; but that word in New York, as elsewhere, must be read in the light of his resources and his manner of living—like his duty to his wife. It "is to be measured with reference to his pecuniary ability, honestly exercised, or his pecuniary resources; that is to say, those things might properly be deemed necessaries in the family of a man of generous income or ample fortune which would not be required in the family of a man whose earnings were small and who had saved nothing. The husband is bound to provide for his wife and children 'whatever is necessary for their suitable clothing and maintenance, according to his and· their situation and condition in life.'" De Brauwere v. De Brauwere, 203 N.Y. 460, 464, 465, 96 N.E. 722, 723, 38 L.R.A.,N.S., 508. The copious verbiage with which the taxpayer hedged about the exercise of his powers as trustee against any revision by a court, may have extended his power beyond the limit of his paternal duty, but it did not set him free to deplete the accumulations by any extravagance that whim or caprice might suggest. He had an opposing duty not to defeat the other purpose for which he had created the trust: to accumulate the income so far as it was not necessary for the child's maintenance. And this duty was particularly exacting, since the exercise of the power would relieve himself pro tanto of his duty as parent. Indeed if there had been no limit, he would have set up no trust whatever: the whole transaction would have been mere mummery. A court of equity will not allow such ancillary provisions to strangle the life and purpose of the transaction in chief. Carrier v. Carrier, 226 N.Y. 114, 125, 123 N.E. 135; Scott on Trusts, § 187 j; Restatement of Trusts, § 187 j & k; Illustration 14. It is not impossible to find what was the limit of any reasonable allowance for the remainder of the child's minority, and the cause must be remanded for that purpose.

When that has been found, the gift made in the year 1936 can be computed. It will consist first of whatever sums the taxpayer paid out of his own funds between November 30, 1931 and December 19, 1932. No part of the payment of $35,000 was to be applicable to the past and the taxpayer could have recouped for their full amount in 1936. The second item will be any sums which he similarly paid out of his own funds between December 19, 1932 and November 30, 1936. It is improbable that there were any such, for the payment of December 19, 1932, was intended to meet the costs of the child's maintenance; nevertheless, if there were any, the taxpayer could have recouped them. The last item will be the amount found to be the proper allowance for the child's minority, less so much of the fund of $35,000 as remained unexpended on November 30, 1936. The trustee could have withdrawn that difference in 1936 and have so provided an adequate fund for future maintenance.

This disposition of the taxpayer's appeal will probably render moot any of the questions raised upon the Commissioner's appeal; at any rate we do not think it desirable to attempt to deal with them at the present time.

Order reversed; cause remanded for further proceedings in accordance with the foregoing opinion.