## HURD v. COMMISSIONER OF INTERNAL REVENUE.
### No. 4227.

Circuit Court of Appeals, First Circuit.
March 7, 1947.

Before DOBIE (By Special Assignment), MAHONEY and WOODBURY, Circuit Judges.

Daniel A. Rush, of Boston, Mass., for petitioner.

Norman S. Altman, Sp. Asst. to Atty. Gen., Sewall Key, Acting Asst. Atty. Gen., Helen R. Carloss and Maryhelen Wigle, Sp. Assts. to Atty. Gen., all of Washington D. C., for Commissioner.

DOBIE, Circuit Judge.

This is a petition to review a deficiency of $5,973.58 in estate taxes assessed by the Commissioner of Internal Revenue (hereinafter referred to as the Commissioner) against Charlotte H. Hurd, executrix of the estate of Edward L. Hurd (hereinafter referred to as the estate, and the decedent, respectively) under Section 811 (d) (2) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 811(d) (2). The

Tax Court ruled in favor of the Commissioner under Section 811(d) (2) without considering the application of Section 811 (c). Jurisdiction is established under Sections 1141 and 1142 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 1141, 1142.

The facts are not in dispute. On November 1, 1935, the decedent, a resident of Massachusetts, created a trust with 300 shares of the capital stock of the American Telephone and Telegraph Company, naming himself and his wife as cotrustees. Insofar as is here material, the trust instrument provided:

"II. During the continuance of the Trust, the Trustees shall pay over to Catherine Hurd Graton, daughter of the Donor or to her husband if she dies leaving a husband or to her lawful issue, or shall expend for her or his benefit or their benefit from time to time the whole or such parts of the net income of the Trust Property and in such proportions as the Trustees may in their own discretion deem necessary for the comfortable support and maintenance of the said Catherine Hurd Graton or of her husband if he survives her or of her said issue, provided always that the Trustees may in their own discretion during the life of Charlotte H. Hurd, wife of the Donor, without regard to the circumstances of the said Catherine Hurd Graton or of her said husband or of her issue, pay over to the said Charlotte H. Hurd or expend for her benefit the whole or any part of the net income of the Trust Property.

"III. During the life of the said Charlotte H. Hurd the Trustees may, if in their opinion the circumstances so require, pay over to or expend for the benefit of the said Charlotte H. Hurd the whole or any part of the principal of the Trust Property."

Other pertinent provisions of the trust instrument may be briefly summarized. The date upon which the remaindermen could share in the corpus was to be determined after the death of certain beneficiaries, and the attainment of age of others. Additional or succeeding trustees could be appointed by the decedent, or, in case of his death or disability, by the remaining or succeeding trustees. In case of the absence or disability of any trustee, power was given to the remaining trustee to act alone or in behalf of all the trustees as effectually as if all were present and acting, but each trustee was responsible for his own acts only, and was not liable for the default or omissions of a co-trustee. The last clause of the instrument provided: "Donor (decedent) reserves no right to revoke, modify or change any of the provisions of the instrument or to repossess himself of the Trust Property under any circumstances whatsoever."

In the fall of 1939, the decedent showed signs of mental deterioration and he was placed under the care of a physician. Thereafter, but some time before his death in May, 1941, it was determined that the decedent was suffering from cerebral arteriosclerosis. A statement was made by the physician that the decedent was incapable of normal decisions at the time he (the physician) was first in attendance, and that the decedent did not regain his faculties prior to death. It thus appears that the decedent was mentally incompetent for approximately 18 months prior to his death.

No steps were taken to remove the decedent as trustee, nor did he resign, nor was there any adjudication of insanity. During this illness, the decedent's wife, the executrix here, administered the trust, but at no time were any payments made to the wife from the principal of the trust.

The Commissioner determined that the whole of the trust corpus was includible in decedent's estate under both Section 811(c) and 811 (d) (2) of the Internal Revenue Code. The Tax Court did not consider the application of Section 811(c), as previously stated, since it found that Section 811(d) (2) fully covered the case. Arriving at the same conclusion as to Section 811(d) (2), we find it unnecessary to consider the applicability of Section 811(c).

Section 811(d) (2) of the Code, relating to transfers made prior to June 22, 1936, provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible,

wherever situated, except real property situated outside of the United States—

\* \* \* \* \* \*

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph."

The question whether this property is includible in decedent's gross estate has two aspects: (1) Whether the trust instrument, on its face, reserved powers to the decedent of such nature as to be within the reach of the statute; (2) the legal effect, if any, of the supervening incompetency of the decedent.

■ We think it plain that the powers reserved in the instrument bring the property back into the estate for purposes of federal estate taxation. The significant provision of the instrument in this respect is contained in Clause III, quoted above, stating that during the life of the wife or the decedent, the trustees may, *if in their opinion the circumstances require*, pay over the principal of the trust in whole or in part to, or for the benefit of, the wife, with eventual distribution of the residue, if any, to the daughter's issue or in default of her issue to her appointees by will or her heirs. We think this amounts to a power reposing in the decedent within the ambit of the statute for it is inescapable that he had the power to reduce or eliminate altogether the shares of the daughter's issue, heirs or appointees. Although divested of any direct pecuniary interest in the principal, the economic leverage retained by the settlor was the very sort of power to which Section 811(d) (2) was

directed and is a retained power to "alter, amend, or revoke." Chickering v. Commissioner, 1 Cir., 118 F.2d 254, 139 A.L.R. 508, certiorari denied 314 U.S. 636, 62 S. Ct. 70, 86 L.Ed. 511; Mellon v. Driscoll, 3 Cir., 117 F.2d 477, certiorari denied 313 U.S. 579, 61 S.Ct. 1100, 85 L.Ed. 1536; Estate of Albert E. Nettleton, 4 T.C. 987. It is akin to the case of an uncontrolled power of acceleration, or termination, in the donor. Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257.

The estate maintains, however, that the powers reserved were limited powers, i.e., the decedent, as trustee, was limited in any payment to his wife by the phrase "if in their opinion the circumstances so require." Reference is made to Estate of Milton Budlong, 7 T.C. 756, in which the Tax Court excluded from the estate of a grantor the principal of a trust which he was empowered to expend for the benefit of the income-beneficiary in case of sickness or other emergency. Apparently that case is somewhat similar to the rationale of a line of decisions ruling that a power which is contingent upon an event beyond the grantor's control, may be so inchoate as to be insufficient to bring the property back into the estate for tax purposes. Compare Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 74 F.2d 851; Brewer v. Hassett, D. C., 49 F.Supp. 501; Blunt v. Kelly, 3 Cir., 131 F.2d 632. Although not concerned directly with Section 811(d), the theory of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, has cast lengthening shadows across the rule as to contingent powers in certain cases. See cases cited in Paul, Federal Estate and Gift Taxation (Supp.1946), Secs. 7.09, 7.10. But we do not find it necessary to prescribe a definite line as to contingent powers (although the estate did argue the improbability of any payment to the donor's wife) nor to adopt or reject the rule in the Budlong case, supra, which, on its face, may give rise to some difficulty in practical application.

■ The word "circumstances", as used in the trust instrument, is as wide as the world and to say that it imposes a legal limitation, or imports a controlling contin-

gency, is to stretch it far beyond good sense. We entertain grave doubts that any equity court would harken to the complaints of a disaffected cestui who might interpose objections to the decedent's invasion of the principal for the use of his wife, irrespective of the "circumstances." Compare Estate of Milton Budlong, supra; Blunt v. Kelly, supra; and Helvering v. McCormack, 2 Cir., 135 F.2d 294. The clause is not restricted to "her" circumstances, but rather to "the" circumstances. It is difficult to think of a much broader reservation of powers than that contained in Clause III.

■ The estate also contends that the decedent had the right to exercise his powers under the trust instrument only in the capacity of trustee. Although Section 811 (d) (2) does not contain the phrase "in whatever capacity exercisable," which is embodied in Section 811 (d) (1) (which relates to transfers after June 22, 1936), this court has ruled that this amendment was only declaratory of existing law. Welch v. Terhune, 1 Cir., 126 F.2d 695, certiorari denied, 317 U.S. 644, 63 S.Ct. 37, 87 L.Ed. 519. See, also, Union Trust Co. of Pittsburgh v. Driscoll, 3 Cir., 138 F.2d 152. We deem it fruitless to pursue this further.

■ The other aspect of the case relates to the incompetency of the decedent during the months prior to his death. To state the question in a manner which the estate itself suggests, it comes to whether or not it is necessary as a matter of law that the decedent should have resigned, or been removed, in order to divest him of the powers reserved under the instrument. We think that question must be answered in the affirmative. The estate relies on the rule that acts performed while one is insane or incompetent, even though insanity may not have been adjudicated at the time of the act, are null and void. Wodell v. John Hancock Mutual Life Ins. Co., Mass., 67 N. E.2d 469; Whelan v. McNally, 277 Mass.

391, 178 N.E. 741. The contention is that anything the decedent might have done would have been without legal effect.

■ We have no quarrel with the rule in the cases cited, as such; but the conclusion drawn by the estate misses the mark. The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power. The decedent may have been limited in his method by his incapacity, but it is not open to question that the power existed in his behalf, either by the trust instrument itself, or by the general law of Massachusetts; and he could have been removed. Although not directly in point, the case of City Bank Farmers Trust Co. v. McGowan, 323 U.S. 594, 65 S.Ct. 496, 498, 89 L.Ed. 483, furnishes a persuasive analogy, for in that case it was held that a woman, although incurably insane, might make a "[gift] in contemplation of death" because the motive of the fiduciary, who made the transfers under court sanction, would be imputed to her and were the "motives and considerations as would have moved her." 323 U.S. at page 598, 65 S.Ct. at page 498. In other words, although insane, she could still make a gift in contemplation of death because of the power she possessed through a fiduciary. See also in this connection, General Laws of Massachusetts, c. 203, Secs. 12, 13; 1 Scott on Trusts, Sec. 92.

The Tax Court thought that there should have been some definitive act correlating the decedent's actual incompetence with his incapacity to serve as trustee. With that we agree, for, as the Tax Court observed in its opinion: "It is not unusual where death follows protracted illness that the decedent is incapable of making normal decisions affecting property rights, and yet we would not suppose that the statute did not apply in such cases."

We think the Tax Court was clearly right and its judgment is affirmed.

The decision of the Tax Court is affirmed.