**ESTATE of Kirstine Geleff BAGLEY, Deceased, the First National Bank of Orlando, Executor, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 30788.**

United States Court of Appeals, Fifth Circuit.

June 8, 1971.

Rehearing Denied July 1, 1971.

Ainsworth, Circuit Judge, dissented and filed opinion.

M. W. Wells, Jr., James A. Moreland, Maguire, Voorhis & Wells, Orlando, Fla., for appellant.

Johnnie M. Walters, Asst. Atty. Gen., Joseph M. Howard, Donald B. Craven, Attys., Tax Div., Dept. of Justice, Washinton, D. C., John L. Briggs, U. S. Atty., Jacksonville, Fla., Janet R. Spragens, Meyer Rothwacks, Loring W. Post, Attys., Dept. of Justice, Tax Div., Washington, D. C., for appellee.

Before WISDOM, BELL and AINSWORTH, Circuit Judges.

BELL, Circuit Judge.

This is an appeal from a judgment of the District Court, 318 F.Supp. 765, denying a refund of federal estate taxes paid by appellant executor. A federal estate tax return for the estate of Mrs. Kirstine Bagley was timely filed. The tax shown to be due in the amount of $42,711.77 was paid with the return. The suit for refund which underlies this appeal was filed after the rejection of a claim for refund. Judgment was entered for the government on its cross-motion for summary judgment and this appeal followed.

The sole issue presented is whether the taxable estate included a testamentary power of appointment when the designee of the power died prior to the probate of the will creating the power. We hold that it did and affirm.

Raymond and Kirstine Bagley, husband and wife, were killed in an automobile accident. It could not be determined which survived the other. A testamentary trust was created in the will of Mr. Bagley for the benefit of Mrs. Bagley during her lifetime, with a general testamentary power of appointment in Mrs. Bagley. The will provided that the power of appointment could be exercised in her will by specific reference to the power. In case Mrs. Bagley failed to exercise the power, there was a gift over to designated beneficiaries. The will also contained a provision that in the event of simultaneous death Mrs. Bagley would be deemed the survivor. Mrs. Bagley's will, executed the same day as her husband's made no reference whatever, by way of an effort to exercise the power of appointment or otherwise, to the power of appointment described in Mr. Bagley's will.

Thereafter a state court entered a decree recognizing the survival of Mrs. Bagley over Mr. Bagley by legal presumption. The decree also provided that since decedent had not exercised her power over the trust assets, the provisions in Mr. Bagley's will passing the assets to designated beneficiaries would control. An estate tax return was then filed on behalf of Mr. Bagley's estate showing the value of the residuary for estate tax purposes at $300,462.36. A marital deduction was claimed by the estate of Mr. Bagley and allowed. Mrs. Bagley's estate tax return included the value of the residuary estate as the value of the power of appointment.[1]

The claim for refund was premised on the position that Mrs. Bagley did not possess a power of appointment over the trust assets at the time of her death because Mr. Bagley's will had not been admitted to probate. The district court concluded that Mrs. Bagley had at the time of her death an exercisable power of appointment, the value of which was subject to the federal estate tax.

We come then to the issue. Did Mrs. Bagley at the time of her death have an exercisable power of appointment, thus subjecting that asset to federal estate taxation under § 2041(a) (2) of the Internal Revenue Code?[2] Central to the resolution of this issue is a determination of whether probate of Mr. Bagley's will was a precondition to Mrs. Bagley having the power of appointment within the contemplation of the estate tax statutes. Appellant does not challenge the fact that the power is a general one, nor is the value of the appointed assets contested.

Our case of Jenkins v. United States, 428 F.2d 538 (5 Cir.1970), is very instructive on the question. There, we were concerned with an inter vivos power of appointment left by the will of one sister to another who died two weeks later and before the first sister's will could be probated. The Commissioner ruled that the value of the property subject to the power of appointment was to be included in the latter sister's estate for estate tax purposes. The district court entered judgment for the taxpayer. One of the grounds for the judgment was that decedent did not possess an exercisable[3] power of appointment at

---

1. It is to be noted that the executor here is also the executor under the will of Mr. Bagley. The wills were executed on the same day. A seeming divergence in interests, a question not before us, comes in the fact that the testamentary scheme results in the beneficiaries under Mrs. Bagley's will being burdened with the payment of the tax rather than the beneficiaries under the will of Mr. Bagley.

2. § 2041 Powers of Appointment.
    (a) *In General.*—The value of the gross estate shall include the value of all property—

  *   *   *   *   *

  (2) *Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment. * * *

3. Under § 2041(a) (2) of the Internal Revenue Code, supra, a post-1942 power need only be exercisable to be subject to taxation, while a pre-1942 power had to be exercised to be taxable. See § 2041 (a) (1).

the time of her death because the first sister's will had not been probated at the time of the death of the second sister. We reversed. On the question whether the absence of probate was controlling to avoid the tax, we held that under Georgia law, the second sister's possession of the power of appointment was not postponed until probate or until any other time later than the death of the first sister.[4]

Our decision in *Jenkins* rested on an examination of the Georgia statutes and case law, and this resulted in the conclusion that the process of probating a will in Georgia is essentially a formal validation of the property interests which come into existence upon the death of the testator. Thus, upon the death of the first sister, the second sister received a beneficial interest in the property subject to later perfection. The essence of the holding was stated by Judge Goldberg for the court as follows:

> "* * * The fact that [the second sister] did not then possess a fully perfected record title is not controlling for federal estate tax purposes. The substantive powers she received at the time of her sister's death clearly came within the definition of a general power of appointment in § 2041(b) (1) of the Internal Revenue Code, and these powers were clearly exercisable at the time of her death." 428 F.2d at 548.

■ It necessarily follows, we think, that the *Jenkins* case must be distinguished if the appellant here is to recover. Appellant's primary effort to accomplish this lies in the assertion that Florida law in the applicable premises differs from Georgia law. In Georgia, it is urged, probate is title-accommodating, while under Florida law, the process of probating a will is interest-creating. Absent probate, no interest was created; hence no power of appointment in Mrs. Bagley. This contention requires an examination of the Florida probate law.

We begin with § 731.05, Florida Statutes Annot., which provides in pertinent part:

> (2) A will becomes effective at the time of the death of the testator, and all property, real or personal, acquired by the testator after making his will is transmissable under general expressions in the will showing such to be the intention of the testator. Every will containing a residuary clause shall transmit after-acquired property unless the testator expressly states in his will that such is not his intention.

While the first clause of this provision, taken alone, would support the district court's holding that probate in Florida is title-accommodating a reading of the whole section, and cases thereunder, indicates that the section was intended to provide that property acquired subsequent to the execution of the will passed under the will. See Hurt v. Davidson, Fla., 1938, 178 So. 556; Hamilton v. Florida National Bank, 1933, 112 Fla. 566, 151 So. 409. There are, however, no decisions restricting this statute to such purposes and the first clause does tend to support the finding of the district court that Florida probate is title-accommodating within the meaning of *Jenkins*.

The finding of the court is further supported by § 731.21, which provides:

> The death of the testator is the event which vests the right to legacies

4. The court placed the role of state law in such circumstances in perspective by quoting from Morgan v. Commissioner, 1940, 309 U.S. 78, 80–81, 60 S.Ct. 424, 426, 84 L.Ed. 585, 588:

"State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed. If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law."

or devises unless the testator in his will has provided that some other event must happen before a legacy or devise shall vest.

Cf. United States v. 936.71 Acres of Land, State of Florida, 5 Cir., 1969, 418 F.2d 551, 554, holding that passage of title dated back to the time of the death of the husband upon the probate of the husband's will thirteen years later. This holding had its genesis in Pournelle v. Baxter, 1942, 151 Fla. 32, 9 So. 2d 162, 164, where the statement was made that "* * * when he becomes a beneficiary under a will the title ipso facto vests in him upon the death of the testator and it is presumed that that title constitutes a beneficial interest in the beneficiary." This statement was unnecessary to the decision in that the will had been probated and the court held that it was necessary for a beneficiary to divest himself of title to real estate received under the will prior to contesting it in a later proceeding. In any event, the quoted statement was restricted by the same court in In re Purdy's Estate, Fla., 1951, 54 So.2d 112, where the court held that it was not necessary to renounce or divest under a will which had not been probated as a condition precedent to questioning the validity of the will. The court pointed to the fact that Pournelle v. Baxter was distinguishable because there the will had been admitted to probate. The rationale of the decision is that under § 732.26, Fla.Stat.Annot., the title does not vest until the will is probated and therefore there is nothing to return absent probate. It is a question of returning benefits already received so as to avoid estoppel. The court in *Purdy's Estate* goes on to say that the contestant, once the benefits have been returned, would be free to contest the validity of the will, and thereafter take under it in the event of failure of the contest. We do not perceive that these Florida cases diminish the proposition that passage of title under a will dates back to the time of death once the will is probated.

Appellant points to § 732.26, supra, to bolster his theory of probate as interest-creating.[5] We view this statute, however, in pari materia with § 731.21, supra, and it becomes an integral part of title-perfecting rather than interest-creating; i.e., that probate is required before title is perfected by dating passage of title back to the time of death. There is nothing in the decision in *Purdy's Estate* which militates against this construction of the two statutes.

In sum, the power of appointment, like a legacy or devise, is inchoate pending probate and dates back to the date of death upon probate. This is the holding of *Jenkins* and it is controlling here. The power of appointment given to Mrs. Bagley under her husband's will was created immediately upon the death of the husband, subject to later perfection by probate.[6]

Lastly, appellant attempts to distinguish the *Jenkins* case from the case at bar on the length of survival in *Jenkins*. The second sister there survived the first sister for over two weeks while here Mrs. Bagley and her husband died simultaneously. This distinction is without legal significance. Under the wills of both Mrs. Bagley and her hus-

5. That statute provides, in relevant part: "Until [a will is admitted to] probate, such will shall be ineffective to convey title to, or the right to possession of, real or personal property of the testator; and, until such probate proceedings have been had, no personal representative shall acquire title to, or the right to possession of, any personal property owned by the decedent at the time of his death, notwithstanding that probate or administration proceedings have been had in some other state or country.

6. The government's position is aided to some extent by Treas.Reg. § 20.2041–1 (e), which provides: "A power of appointment created by will is, in general, considered as created on the date of the testator's death."

band, Mrs. Bagley was presumed the survivor in a simultaneous death situation. For the theoretical instant in which Mrs. Bagley survived her husband, the power of appointment created by the husband's will was exercisable. We made it plain in *Jenkins* that the length of survival does not change the character of the property interest. 428 F.2d at 549.

Affirmed.

AINSWORTH, Circuit Judge (dissenting).

Today we affirm a District Court decision denying the estate of the late Mrs. Kirstine Bagley a refund of federal estate taxes of $42,711.77, representing the tax on $300,462.36 of property which passed under her husband's will, not to Mrs. Bagley's beneficiaries (from whose inheritance the tax will be deducted), but to the heirs of her husband. The property in question descended to Mr. Bagley's heirs without any opportunity on Mrs. Bagley's part to alter the disposition, and apparently without any knowledge on her part that she had the power to do so. This inequitable result springs entirely from a finding, based on a clause in Mr. Bagley's will, that Mrs. Baley survived her husband for a "theoretical instant." I respectfully dissent.

According to the Government's brief, the Commissioner of Internal Revenue has allowed Mr. Bagley's estate a marital deduction for federal estate tax purposes on the property involved in the instant case. Mrs. Bagley's estate, the appellant here, was not a party to that determination; the question of its correctness is not before this Court. For my part, the Commissioner's action should not control the result here, to the prejudice of the substantial rights of Mrs. Bagley's heirs.

The federal estate tax is a tax on the exercise of the privilege of directing the course of property at one's death. Rog-

ers' Estate v. Helvering, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134, (1943); see Estate of Whipple v. United States, 6 Cir., 1969, 419 F.2d 494, 496; Jandorf's Estate v. Commissioner of Internal Revenue, 2 Cir., 1948, 171 F.2d 464, 465; Commissioner of Internal Revenue v. Clise, 9 Cir., 1941, 122 F.2d 998, 1001, cert. denied, 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218. The exercise of a power of appointment in one's will is one means by which the course of property may be directed at death. Subject to certain exceptions, the value of property thus transferred is now and has been for many years included in the value of the gross estate of the decedent for federal estate tax purposes. See Int. Rev.Code of 1954, § 2041; 2 J. Mertens, The Law of Federal Gift and Estate Taxation, §§ 19.01.–06 (1959). Prior to 1942, unexecuted powers of appointment were treated differently: the value of property subject to a power of appointment vested in a decedent who failed to exercise it was not included in the value of his gross estate for federal estate tax purposes. See Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266 (1942). In the Revenue Act of 1942, however, Congress amended the pertinent section of the Internal Revenue Code. Section 2041(a) (2) of the Internal Revenue Code of 1954 now provides that the value of a decedent's gross estate shall include "the value of all property * * * to the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942. * * *"

The rationale for including in the gross estate of a decedent property subject to unexercised powers of appointment vested in him is apparent: one who has a power of appointment and has a reasonable opportunity to exercise it, controls the disposition of the property whether he exercises the power or not. See Minority Report, H.R.Rep. No. 327 (Part 2), 82nd Cong., 1st Sess., p. 2,

quoted in Mertens, supra, § 19.05 at 497; cf. Chase Nat. Bank v. United States, 278 U.S. 327, 334–35, 49 S.Ct. 126, 127, 73 L.Ed. 405 (1929) (value of insurance policies taxable to decedent who retained right to change beneficiary). A decedent who has knowingly permitted such a power to lapse at his death has exercised the privilege of directing the course of the property subject to it, as surely as if he had taken the formal steps necessary to exercise the power itself. *Cf.* Jenkins v. United States, 5 Cir., 1970, 428 F.2d 538, cert. denied, 400 U.S. 829, 91 S.Ct. 59, 27 L. Ed.2d 59; Miller v. United States, 3 Cir., 1968, 387 F.2d 866.

The situation is entirely different, however, where the donee of a power of appointment does not know that it has been conferred, or after he learns of it has no opportunity to exercise it. In cases of this kind, where, in default of any action by the donee, the property passes to beneficiaries designated by the donor in the instrument creating the power of appointment, there is obviously no basis for saying that those beneficiaries have taken because the *donee* of the power so willed. Cf. Rogers' Estate v. Helvering, 320 U.S. 410, 414, 64 S.Ct. 172, 174, 88 L.Ed 134 (1943). To tax the donee's estate on the value of the property which descended to others without the donee's participation, active or passive, would be not only inconsistent with the rationale of federal estate taxation, but unjust and a deprivation of property without due process of law.

The *Jenkins* case on which the majority relies was a case of the former type. Ada Lee Jenkins and her sister Martha O. Jenkins, residents of Georgia, together executed substantially identical wills. Ada's will conferred on Martha a general power of appointment over certain of Ada's property. Martha was fully aware of this provision in her sister's will, and had ample time in which to exercise or renounce the power after Ada died. This Court expressly relied on these facts in sustaining taxation of Martha's estate on the property subject to the unexercised power. See Jenkins v. United States, 5 Cir., 1970, 428 F.2d 538, 550–551.

Much was made in the *Jenkins* case of the question whether probate in Georgia is "interest-creating" or "title-accommodating." That question was relevant as part of a broader inquiry, to wit: under Georgia law, since the instrument creating the power was a will, would the donee's purported exercise of the power prior to probate of the will be null and void? This inquiry was necessary in *Jenkins* because the donee, though she knew of the power and outlived the donor, died before the donor's will was probated. If, as a matter of state law, any document executed by Martha Jenkins as donee prior to probate could have had no present or future legal effect, the Court would have had to conclude that Martha died without ever having had the privilege of disposing of the property, and hence that the value of the property could not be taxed to her estate. We found, however, that probate in Georgia is title-accommodating; that Martha could have exercised the power effectively at any time during the seventeen days between Ada's death and her own; and that hence she had, at the time of her death, an unexercised power of appointment within the meaning of Section 2041 of the Internal Revenue Code of 1954.

In the instant case the ultimate inquiry is the same: did the donee of the power, Mrs. Bagley, have the opportunity to direct the course of the property in question at her death? The facts, however, are significantly different.

Mr. Bagley's last will was executed on December 21, 1962. Two days later, on December 23, Mr. and Mrs. Bagley died in an automobile accident, under circumstances making it impossible to determine whether or not they died at the same moment. Article X of Mr. Bagley's will provided that in the event he or his wife should die "simultaneously

or under such circumstances that it cannot be readily determined which of us died first, then it is my will that my wife shall be deemed to have survived me." Article VI. 3 of Mr. Bagley's will further provided:

> Upon the death of my wife, KIRSTINE, the principal of the [aforementioned] trust fund then remaining shall be paid over free and discharged of all trusts as my wife in her last will may appoint by a provision specifically referring to this power; and I hereby confer upon my wife the right by a provision in her last will containing such a specific reference to this power to exercise said power of appointment in her sole and uncontrolled discretion and as she may wish including without limiting the generality of the foregoing, the right to exercise it in favor of her own estate.

Thus a general clause in Mrs. Bagley's will purporting to dispose of all property of which she might have the power to dispose at the time of her death would not have effectively exercised the power conferred by her husband's will. Cf. Hamilton v. Florida Nat. Bank of Jacksonville, 112 Fla. 566, 151 So. 409, 91 A. L.R. 615 (1963). Without knowledge of this provision, she was powerless. There is nothing whatsoever in the pleadings or affidavits in this case to indicate that Mrs. Bagley ever knew this provision existed.[1]

The majority in this case does not consider the question of Mrs. Bagley's knowledge. As to her opportunity to exercise the power, the majority holds that it could have been exercised in the "theoretical instant" in which she survived her husband, by virtue of Article X of his will. In my view, this reasoning is incompatible with the purpose of the statute we are construing.

The fact that quite apparently the deaths of Mr. and Mrs. Bagley were very nearly simultaneous renders the question whether probate in Florida is "title-accommodating" or "interest-creating" superfluous. We are not bound, by the mere fact that Florida law affords some legal efficacy to simultaneous-death clauses of the type included in Mr. Bagley's will, to let that clause rule this case under the federal estate tax laws. We cannnot ignore the realities of the decedent's situation, and make the result turn on "the niceties of the conveyancer's art." See Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 58 n. 1, 62 S.Ct. 925, 927 n. 1, 86 L.Ed. 1266 (1942). Congress, in amending the power-of-appointment provision of the estate tax law from time to time, has expressed concern for the fact that many powers of appointment are not discovered until it is too late for the donees to do anything about them, and has sought to avoid setting traps for the unwary. See U.S. Code Cong. and Adm.Serv., Vol. 2, 82nd Cong., 1st Sess., 1951, pp. 1530–32, quoted in the opinion of this Court in United States v. Merchants National Bank of Mobile, 1958, 261 F.2d 570, 574–575. Today we spring a trap set only by ourselves. As a result of our decision, the estate passing to the heirs of one decedent will be diminished by federal estate taxes on property passing to another decedent's beneficiaries, without justification in law or equity.

---

1. The fact that the last wills of Mr. and Mrs. Bagley bear the same date is not conclusive, certainly not so much so as to warrant summary judgment for the Government.