**John H. FINLEY, Executor of the Estate of Mildred B. Whitlock, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 75-1005-Civ-CA.**

United States District Court, S. D. Florida.

Dec. 2, 1975.

George H. DeCarion, Culverhouse, Tomlinson, Mills, DeCarion & Anderson, Miami, Fla., for plaintiff.

Patricia Kyle, Asst. U. S. Atty., for the United States.

## ORDER GRANTING SUMMARY JUDGMENT FOR PLAINTIFF

ATKINS, District Judge.

This action for refund of federal estate taxes paid to the defendant United States government is brought by John H. Finley, Executor of the estate of Mildred B. Whitlock. Plaintiff-executor and defendant United States of America agree in their joint addition to the pretrial stipulation that there are no disputed material facts and that this cause may be disposed of based on the pleadings and agreed facts recited in the pretrial stipulation and addition thereto.

Mildred B. Whitlock died testate on December 18, 1971, two months after her husband Lester J. Whitlock's death on October 18, 1971. In accordance with her husband's will, a trust was created for Mildred B. Whitlock. Under the terms of this trust decedent received the income therefrom for the extent of her life, together with a general testamentary power of appointment over the corpus of the trust existing at the time of her death. At no time between October 18, 1971 and December 18, 1971 did Mildred B. Whitlock exercise or release, or attempt to exercise or release the general power of appointment of which she was donee under the will of Lester J. Whitlock. The will of Mildred B.

Whitlock did not exercise or release or attempt to exercise or release the power of appointment of which she was donee under the will of her husband, Lester J. Whitlock. Decedent Mildred B. Whitlock, at all times from the devise of the power of appointment to her on October 18, 1971 to the time of her death, December 18, 1971, was mentally incompetent and lacked the requisite testamentary capacity to execute a will or codicil. The parties further agree that decedent Mildred B. Whitlock lacked the legal capacity to exercise the general testamentary power of appointment of which she was donee.

A marital deduction was claimed on the United States Estate Tax Return, Form 706, filed by the Estate of Lester J. Whitlock, in respect to the value of the property which was the subject matter of the general power of appointment of which Mildred B. Whitlock was donee. This deduction was initially allowed, but upon inception of this suit, the Internal Revenue Service asserted deficiencies in estate tax against the Estate of Lester J. Whitlock based upon a disallowance of said deduction.

The major issue of law before this Court is whether decedent Mildred B. Whitlock, at the time of her death, possessed a general power of appointment within the meaning of 26 U.S.C. § 2041(a)(2) so that the property forming the subject matter of the power is includable in her gross estate for federal estate tax purposes. A general power of appointment is defined as a power which is exercisable in favor of decedent, her estate, her creditors, or the creditors of her estate. 26 U.S.C. § 2041(b)(1). There is no dispute that by its terms the subject power of appointment was a general testamentary power of appointment. Plaintiff contends, however, that the statute contemplates the inclusion of the value of appointive property in the gross estate of a deceased donee of the power *only* where the deceased donee, personally or through a guardian, had

the legal capacity to control the devolution of the appointive property. There is no direct Fifth Circuit precedent on this issue.

■ The federal estate tax is a tax on the exercise of the privilege of directing the course of property at one's death. *Rogers' Estate v. Helvering,* 320 U.S. 410, 413, 64 S.Ct. 172, 88 L.Ed. 134 (1943), *see Estate of Bagley v. United States,* 443 F.2d 1266, 1270 (5 Cir. 1971). Congress has included in the gross estate of a decedent donee property subject to an unexercised power of appointment. § 2041(a)(2) of Internal Revenue Code of 1954, 26 U.S.C. § 2041(a)(2). This legislation recognizes that one who has the opportunity to exercise a power, controls the disposition of the property, whether he exercises it or not. *See Estate of Bagley v. United States, supra,* at 1270, and cases cited therein. (Ainsworth, J. dissenting).

In *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970), the Ninth Circuit adopted the position that the opportunity to control the disposition of property by a power of appointment should be determined solely by the existence of the power, its terms, and not by the decedent donee's legal capacity to exercise the power. The taxpayer alleged that the decedent donee was incompetent for seven years prior to her death and that her general power of appointment could not have been lawfully exercised or released by her or anyone acting in her behalf. Under these facts, the taxpayer argued the annual expiration of the decedent donee's power over the trust income was not a "lapse" and therefore not a release of the power within the meaning of Section 2041(b)(2) of Internal Revenue Code of 1954. The Court held it immaterial whether the decedent donee was in fact incompetent or whether the power could have been exercised by a guardian acting in her behalf. Instead, the Court determined that the taxability and inclusion of assets in decedent's gross estate are determined by

the existence of the power and not by the manner of exercising or releasing.[1]

A divergent and better view first emerged in *Hurd v. Commissioner of Internal Revenue,* 160 F.2d 610 (1 Cir. 1947). The decedent transferred property in trust, named himself a co-trustee and reserved to his trustees power to terminate the trust through distributing principal at any time to his wife. The provisions of the estate tax law involved were Section 2036 and Section 2038. The sections require the inclusion in the gross estate of a decedent of any property of which he has made a transfer wherein he has retained "the right, either alone or in conjunction with any [other] person, to designate the persons who shall possess or enjoy the property or the income therefrom" (Section 2036(a)(2)), or wherein he has retained the right "to alter, amend, revoke, or terminate . . . ." (Section 2038 (a)(1)). The facts show that decedent was competent for some two and one-half years during the continuance of these powers which he had reserved to himself in his capacity as a co-trustee. During the eighteen months prior to his death, however, decedent was allegedly mentally incompetent. The Court stressed that the decedent had never resigned as trustee and had never been adjudicated an incompetent. It held that in order to be divested of the powers which he held and thus avoid taxability, he would either have had to (i) be removed as trustee or (ii) have effectively resigned. In the absence of one of the foregoing

the Court held decedent would be deemed to possess the powers. The Court stated:

> To state the question in a manner which the estate itself suggests, it comes to whether or not it is necessary as a matter of law that the decedent should have resigned, or been removed, in order to divest him of the powers reserved under the instrument. We think that question must be answered in the affirmative.

While the court did say "The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power," it appears from what follows that the court had reference to the general law of Massachusetts making it possible for a committee, guardian or representative to exercise the power on behalf of the decedent. This is indicated by the quotation from *City Bank Farmers' Trust Co. v. McGowan,* 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483, where the United States Supreme Court upheld the imposition of estate taxation with respect to gifts made (in contemplation of donor's death) by a fiduciary on behalf of an insane donor. The decision of the Court is summed up in its statement that "the Tax Court [felt] that there should have been some definitive act correlating the decedent's actual incompetence with his incapacity to serve as trustee. With that we agree . . . ." The clear implication of this holding was that if the decedent, personally or through a guard-

---

1. The Fish court utilized the precedents of *Round v. Commissioner of Internal Revenue,* 332 F.2d 590 (1 Cir. 1964), discussed *infra.,* fn. 2, and *Townsend v. United States,* 232 F.Supp. 219 (E.D.Tex.1964) to reach its decision. In *Townsend,* the husband's will granted to the surviving wife an unrestricted power to consume, use, sell, or otherwise dispose of the corpus of a trust. The wife died six days after her husband, prior to probating his will. Her executor challenged the inclusion of property subject to the power in the widow's gross estate for estate tax purposes on three grounds. The Court held in favor of the widow's estate on her first

ground that under Texas law the power did not come into existence until the husband's will was probated. It then proceeded in what was dicta to state that her second argument, that physical or mental incapacity prevented her from exercising the power and therefore from possessing a power of appointment within the meaning of Section 2041(a)(2) of the Internal Revenue Code of 1954, was meritless. These observations focus on the unimportance of actual ability to exercise the power but fail to analyze whether general legal capacity to exercise the power must exist as a condition for taxability under Section 2041(a)(2).

ian, lacked legal capacity to act as trustee, taxation would have been improper.[2]

Although not directly on point, *Commissioner of Internal Revenue v. Noel,* 380 U.S. 678, 85 S.Ct. 1238, 14 L.Ed.2d 159 (1965) supports this position. The question presented in *Noel* was whether within the meaning of § 2042(2) of the Internal Revenue Code of 1954, 26 U.S. C. § 2042(2), decedent "possessed at his death any of the incidents of ownership" in flight insurance policies purchased just prior to his take-off on a fatal air trip. Under the policies, decedent had the right to amend or change the beneficiaries, an incident of ownership. Immediately after purchasing the policies and before departing on his flight, decedent delivered the policies to his wife. Obviously, there was no practical opportunity for the decedent to assign the policies or change the beneficiary between the time he boarded the plane and the time he died. Nevertheless, the Supreme Court included the proceeds in decedent's estate. Congress did not intend to measure estate tax liability by an individual's fluctuating day-by-day capacity to dispose of property. The Court held however that "estate tax liability for policies 'with respect to which the decedent possessed at his death any of the incidents of ownership' depends on a *general, legal power to exercise ownership,* without regard to the owner's ability to exercise it at a particular moment." [emphasis added] *Id.* at 684, 85 S.Ct. at 1241.

The Fifth Circuit in *Estate of Bagley v. United States,* 443 F.2d 1266 (5th Cir. 1971), without citing *Noel,* applied a similar analysis in a case involving Section 2041(a)(2) of Internal Revenue Code, the statute presently before this Court. A husband-donor and wife-donee of a power of appointment were killed in an automobile accident. It could not be determined which survived the other. A testamentary trust was created in the will of the husband for the benefit of the wife during her lifetime, with a general testamentary power of appointment in the wife. The husband's will provided that the power of appointment could be exercised in the wife's will by

2. On first impression, the recent First Circuit opinion, *Round v. Commissioner of Internal Revenue,* 332 F.2d 590 (1 Cir. 1964) appears to modify *Hurd* and look to the terms of a trust rather than the trustees legal capacity to determine his opportunity for control over the property. However, on closer examination, *Round* also requires general legal capacity to control the property as a precedent for taxation.

Twenty-three years prior to his death, decedent established spendthrift trusts and retained sufficient powers as co-trustee to accumulate or distribute income and to invade and distribute the corpus. The year before his death a state court, upon decedent's petition, appointed a conservator for decedent's property due to his physical inability to care for the property. As of the date of his death, decedent had never tendered in writing his resignation as co-trustee of the trusts. There was, however, no evidence that decedent took any action in regard to the trusts following the appointment of the conservator.

The executors of the decedent's estate argued that under the terms of the trust decedent was removed as trustee upon his becoming incapacitated. They also urged that the appointment of a conservator of decedent's property extinguished the authority of decedent to act as co-trustee under the instruments.

The trust instruments provided that upon the decease, resignation or incapacity of decedent the remaining co-trustee would become the sole trustee. Incapacity was not defined in the trust instrument.

After emphasizing that decedent was never declared mentally incompetent, the Court noted that under state law the appointment of a conservator did not remove the possibility that decedent could have recovered and resumed his position as co-trustee. The Court then interpreted the trust instruments as requiring the *permanent* incapacity of decedent before terminating his power to act as trustee. Decedent retained control over the trust property not only because of the trust terms. His temporary incapacity did not terminate his general legal ability to resume his duties and control the property.

specific reference to the power. If the wife failed to exercise the power, there was a gift over to the husband's designated beneficiaries. His will also contained a provision that in the event of simultaneous death the wife would be deemed the survivor. The wife's will, executed the same day as her husband's, made no reference whatever to the power of appointment.

The Court found that by reason of the presumption in the will, and a state court decree, the wife survived by a split second. Her actual physical inability to exercise the power during that instant did not concern the Court. As the Court emphasized, for the theoretical instant the wife survived her husband, she had the capacity by law to exercise the power.

Unlike the decedents in *Hurd*, *Noel* and *Bagley*, Margaret Whitlock from the time of devise of the general power of appointment until her death lacked the legal capacity to exercise the general testamentary power of appointment. This prevented her from possessing a general power of appointment within the meaning of Section 26 U.S.C. § 2041(a)(2). Accordingly, the property forming the subject matter of the power should not have been includable in her gross estate for federal estate tax purposes.[3] Plaintiff shall submit a proposed summary final judgment to the Court and mail a copy to defendant within five days from entry of this order. Defendant shall have five days from receipt of the proposed judgment to object to form.

---

3. This Court's holding obviates the need to address plaintiff's constitutional argument.