ESTATE OF JAMES C. FREEMAN, DECEASED, PHIL R. FREEMAN, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4727–74.    Filed November 10, 1976.

*Joel M. Butler,* for the petitioner.
*Melvern Stein,* for the respondent.

### OPINION

DRENNEN, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of James C. Freeman in the amount of $10,079.58. The sole issue for decision is whether

the value of property over which decedent purportedly held a general power of appointment at his death is includable in decedent's gross estate under section 2041, I.R.C. 1954.[1]

All of the facts have been stipulated. The stipulation together with associated exhibits are incorporated herein by this reference.

James C. Freeman (decedent) died intestate on June 19, 1970. At the time of his death, decedent was a resident of the County of Los Angeles, State of California.

Phil R. Freeman, decedent's father, was appointed administrator of decedent's estate by the Probate Court of the Superior Court, State of California, County of Los Angeles, on July 29, 1970. Phil R. Freeman will hereafter be referred to as decedent's father or petitioner. At the time of filing the petition herein, petitioner resided in Los Angeles County, State of California.

The Federal estate tax return for the Estate of James C. Freeman was filed with the District Director of Internal Revenue, Los Angeles, Calif., on August 2, 1971.

On January 31, 1952, when decedent was 10 years old, decedent's parents created a trust for decedent's benefit, known as the "James C. Freeman Trust." The trust agreement established decedent as the sole named beneficiary and, in pertinent part, contained the following provisions:

I

The entire net income from the Trust Estate shall be distributed in monthly or other convenient installments to, or used for the benefit of, the Beneficiary of this Trust, until the termination of this Trust; thereupon principal to the Beneficiaries entitled to income.

II

The term of this Trust shall be for a period of twenty-one (21) years from the date hereof.

Should the Beneficiary die during the term of this Trust, the share of said deceased Beneficiary shall go and be distributed to his then living lawful issue. Should there be no such issue then living, the share of such Beneficiary shall be distributed to his heirs at law according to the laws of succession of the Laws of California, specifically excluding the Trustors as heirs of said Estate.

* * *

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

IV

The funds of this Trust shall not be used by the Trustee during the minority of Beneficiary to satisfy any legal obligation of support due from Trustors to Beneficiary.

\* \* \*

VII

As long as the Beneficiary is a minor, any part of his share shall be payable to him for any purpose whatsoever in accordance with his needs and best interests as if his interest were held by the Trustee as guardian for the child and the Trustee was making payment and distribution in that capacity. Furthermore, notwithstanding any other provisions of the Trust, the Beneficiary, or his legally appointed guardian, is hereby given the right to terminate this Trust, or withdraw under this Trust Agreement, in whole or in part, the principal or accumulated income, if any, by sending a written request to the Trustee (See JOHN W. KIECKHEFER v. COMMISSIONER, CCA 7th, Docket No. 10,301, decided May 23, 1951). Any other provisions in this Trust Agreement shall be limited and modified to the extent necessary to carry out the provisions of this paragraph VII.

In 1958, when decedent was 16 years old, he incurred severe injuries from a swimming accident and as a result was rendered a quadriplegic from that time until he died at age 28 years; decedent's resulting condition was listed as the cause of his death.

During his lifetime, subsequent to the establishment of the trust, decedent received periodic payments of income from the trust. Decedent never saw the trust instrument and was never informed about and had no actual knowledge of his rights under paragraph VII of the trust.

The fair market value of the James C. Freeman Trust on the date of decedent's death was $56,291.88. The estate tax return filed by decedent's estate did not include in the gross estate the value of the trust. Respondent's determination that at the time of his death decedent had a general power of appointment over the trust estate and that his gross estate included the value of the trust under section 2041(a)(2) of the Code, together with other adjustments not pertinent herein, gave rise to the deficiency now at issue.

The only issue to be decided in this case is whether, by virtue of the power granted to decedent under paragraph VII of the James C. Freeman Trust, to terminate said inter vivos trust and receive the assets thereof, the fair market value of

said trust must be included in decedent's estate for Federal estate tax purposes under section 2041(a)(2).

Section 2041(a)(2)[2] provides, in part, that the gross estate shall include the value of all property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942. There is no disagreement herein as to the nature of the power conferred upon decedent under paragraph VII of the trust; both parties recognize that, as defined under section 2041(b)(1), the language in paragraph VII created a general power of appointment in favor of decedent. Petitioner contends, however, that since decedent was not informed of and had no actual knowledge of the power granted to him under paragraph VII of the trust, the value of the trust should not be included in decedent's gross estate under section 2041(a)(2).

Essentially petitioner makes two arguments in support of his contention: (1) That the Federal estate tax is a tax imposed on the exercise of the privilege of directing the course of property at one's death (*Rogers' Estate v. Helvering*, 320 U.S. 410 (1943)), and since decedent was not even aware of the existence of the power given to him under paragraph VII of the trust, he was unable to exercise said power and thus, at his death, the trust assets passed to beneficiaries designated by the grantors of the trust, so the value of the trust should not be taxable in decedent's estate; and (2) without knowledge of the power of appointment granted under the trust, decedent had no opportunity to exercise his statutory right provided under section 2041(a)(2) to disclaim said power and

---

[2] SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

* * *

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

accordingly cannot be deemed to have ever accepted or possessed said power of appointment.[3] We find for the respondent.

Petitioner's initial argument relies upon language used by the Supreme Court in *Rogers' Estate v. Helvering, supra,* in which the Court described the Federal estate tax as a tax imposed upon the privilege of directing property. Petitioner's reliance thereon is misplaced. Although the Court's characterization is essentially correct (and was clearly an appropriate rationale for the result the Court reached in that case), the Court was dealing with section 302(f) of the Revenue Act of 1925, which included in the gross estate the value of property "To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will." The law then under consideration did not contain a provision similar to section 2041(a)(2) here involved. See discussion in *Jenkins v. United States,* 428 F.2d 538, 544 (5th Cir. 1970). In *Rogers' Estate* the Court was concerned with whether the exercise of a power of appointment by his will required the value of the property subject to the power to be included in the estate of the donee of the power. The language used was appropriate for the discussion of that issue. Justice Holmes writing for the Court in *New York Trust Co. v. Eisner,* 256 U.S. 345 (1921), which upheld the constitutionality of the Federal estate tax, more accurately described such tax as an imposition on the *transfer* of property. Section 20.0–2, Estate Tax Regs., describes the estate tax as "a tax imposed upon the transfer of the entire taxable estate."[4] Incidents of estate taxation where a decedent has no "privilege of directing property" are not uncommon, for example, taxation of the estate of a minor, or taxation of a decedent's estate which

---

[3] On brief petitioner also argues that if we decide the trust assets are includable in decedent's estate under sec. 2041(a)(2), notwithstanding his lack of knowledge of the existence of the power created by the trust, then, as so applied, sec. 2041(a)(2) constitutes a deprivation of property without due process of law, in violation of the fifth amendment to the U.S. Constitution.

We do not consider herein this constitutional argument which was not contained in the pleadings but raised for the first time on brief. *Estate of Rebecca Edelman,* 38 T.C. 972 (1962); *Estate of Louis Solowey,* 15 T.C. 188 (1950), affd. per curiam 189 F.2d 968 (2d Cir. 1951), cert. denied 342 U.S. 850 (1951).

[4] See also *Riggs v. Del Drago,* 317 U.S. 95 (1942); Stephens, Maxfield & Lind, Federal Estate and Gift Taxation, p. 1–2 (3d ed. 1974).

escheats to the State. At any rate, descriptions of the estate tax do not determine what shall be included in the taxable estate; rather, that must be determined under the statute. Section 2041(a)(2) specifically requires inclusion in the gross estate of property subject to a general power of appointment held at death.

Insofar as petitioner's argument encompasses a challenge of the applicability of section 2041(a)(2) to this case on grounds that decedent, because of his lack of knowledge of the existence of the power, had no opportunity to exercise the rights given him under paragraph VII of the trust, this appears to be a question of first impression in this Court. However, respondent asserts that several judicial decisions in related situations provide guidance. Respondent cites a number of cases involving the effect of a decedent's mental or physical incapacity on the inclusion in the gross estate of property subject to a section 2041 general power of appointment held by the decedent,[5] property over which the decedent retained a section 2038 power to alter, amend, revoke, or terminate the enjoyment thereof,[6] and property receivable as insurance proceeds under a policy with respect to which the decedent possessed incidents of ownership as described in section 2042.[7] Respondent offers these cases in support of his proposition that the ability or inability to exercise a general power of appointment is not determinative in considering the applicability of section 2041(a)(2); determination of the *existence* of the power at death is the sole relevant inquiry.

Petitioner contends that cases cited by respondent are inapposite to the present situation because unlike the present situation the decedents in those cases were not incompetent for the entire period of time from the creation of the taxable powers until their deaths. Moreover, in a recent District Court decision the court held that a decedent who was *mentally* incompetent during the entire period from the creation of the general power of appointment until her death did not "possess" said power for purposes of section 2041(a)(2). See

---

[5] *Estate of Rebecca Edelman, supra; Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970); *Estate of Bagley v. United States,* 443 F.2d 1266 (5th Cir. 1971). See also Rev. Rul. 55–518, 1955–2 C.B. 384; Rev. Rul. 75–351, 1975–2 C.B. 368.

[6] *Hurd v. Commissioner,* 160 F.2d 610 (1st Cir. 1947), affg. 6 T.C. 819 (1946).

[7] *Commissioner v. Noel's Estate,* 380 U.S. 678 (1965).

*Finley v. United States,* 404 F.Supp. 200 (S.D. Fla. 1975), on appeal to the Fifth Circuit.[8]

Although both parties have treated the present situation as one in which a disability precluded the exercise of the general power of appointment created under paragraph VII of the trust agreement, we have no evidence which supports such analysis. The parties stipulated that decedent was never informed of and had no actual knowledge of the power granted to him under the trust. However, there was no indication in the stipulation that decedent was ever subject to any mental or physical disability that rendered him incapable of exercising his power. While there may be some inferences which can be drawn from the cases dealing with disabilities relevant to the present situation and some of the language and reasoning used by the courts in those cases is of some help herein, the present case is clearly distinguishable and is neither controlled by nor sufficiently analogous to such cases to accord them much weight herein.

Following the establishment of the trust and subsequent to the period during which decedent was a minor and legally incapable of exercising his general power under the trust, there was a time span of some 10 years during which decedent had the legal power to terminate the trust and receive the assets thereof. This is not a case in which the decedent was unaware of the existence of the trust since he was receiving income distributions therefrom and had been since the creation of the trust. Furthermore, the decedent unquestionably had the right to know of the existence of the power contained in paragraph VII of the trust and could have acquired that knowledge by simply requesting the same from the trustee. Regardless of how we might be disposed to treat a situation wherein a disability[9] precluded a decedent donee from exercising a general power of appointment, under the circumstances of this case we fail to see how any "disability" existed and refuse to hold that decedent's failure to exercise the power contained in paragraph VII of the trust simply

---

[8] But see Rev. Rul. 55–518, 1955–2 C.B. 384; Rev. Rul. 75–351, 1975–2 C.B. 368.

[9] It is informative to note that the court in *Finley v. United States,* 404 F.Supp. 200 (S.D. Fla. 1975), stated that the *legal* disability of the decedent precluded a finding of possession of the general power therein specifically distinguishing the situation from one where some other type of disability prevented the exercise of the power.

because he was, for whatever reason, unaware thereof requires exclusion of the trust assets from decedent's gross estate. The existence of the power of appointment brings it within the ambit of section 2041(a)(2). *Hurd v. Commissioner,* 160 F.2d 610 (1st Cir. 1947); *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970).

The underlying premise of petitioner's second argument is that every donee of a post-October 21, 1942, general power of appointment is given a statutory right to disclaim or renounce said power and pursuant to respondent's regulations[10] a donee may effectively so renounce or disclaim within a reasonable time after learning of the existence of said power. Petitioner concludes from the above that a donee cannot be said to have accepted nor, a fortiori, to possess said power for purposes of section 2041(a)(2) until such time as he has learned of the power and had a reasonable time within which to accept or reject said power. We disagree.

Under section 2041(a)(2) the alternative statutory prerequisites for the imposition of tax is *possession* of a general power at death *or release* of such power under certain circumstances. In the Powers of Appointment Act of 1951,[11] Congress amended this section to provide that a disclaimer or renunciation of a general power shall not be considered *a release.* Under section 20.2041–3(d)(6), Estate Tax Regs.,[12] a disclaimer or renunciation will be effective for such purposes, i.e., so as not to constitute a taxable release, if it is unequivocal and effective under local law. Consequently, if a power is renounced or disclaimed in the above-described manner, the property subject thereto will not be included in

---

[10] Sec. 20.2041–3(d)(6), Estate Tax Regs.

[11] Ch. 165, Pub. L. No. 58, 65 Stat. 91.

[12] (d) *Releases, lapses, and disclaimers of general powers of appointment.* * * * (6) A disclaimer or renunciation of a general power of appointment is not considered to be a release of the power. The disclaimer or renunciation must be unequivocal and effective under local law. A disclaimer is a complete and unqualified refusal to accept the rights to which one is entitled. There can be no disclaimer or renunciation of a power after its acceptance. * * * the determination as to whether or not there has been a complete and unqualified refusal to accept the rights to which one is entitled will depend on all the facts and circumstances of the particular case, taking into account the recognition and effectiveness of such a disclaimer under local law. * * * In the absence of facts to the contrary, the failure to renounce or disclaim within a reasonable time after learning of its existence will be presumed to constitute an acceptance of the power.

the gross estate because at death the donee will not possess said power and said disclaimer is not a release.

If the donee does not disclaim the power given to him and by its terms the power exists at the date of his death, then the statute requires inclusion in the gross estate of the property over which said power relates. As observed by the court in *Townsend v. United States,* 232 F.Supp. 219, 222 (E.D. Tex. 1964), after considering the same argument made herein by petitioner:

Although said Section 2041 * * * provides for the release or renounce-ment of a power of appointment, there is no provision in that statute, or in any other statute, known to the Court providing that a power of appointment shall not be effective unless the person upon whom it is conferred has a reasonable time within which to renounce or release said power. Therefore, if this Court were to sustain Plaintiff's * * * contention it would be creating an exemption from the provisions of Section 2041(a)(2) which is not provided for by the Internal Revenue Code. That this Court does not have the power to do.

Section 20.2041–3(d)(6), Estate Tax Regs., represents an attempt to interpret the congressional enactment and we find it to be in accord with the legislative history. See S. Rept. No. 382, 82d Cong., 1st Sess., U.S. Code Cong. & Adm. News 1530, 1534 (1951). However, the statutory disclaimer provision, and perforce the regulatory interpretation thereof, is by its terms limited in scope, i.e., to permit a disclaimer without triggering one of the statutory prerequisites of taxability—a release. There is no basis for the proposition that a power of appointment does not exist unless the donee has a reasonable opportunity to disclaim the power. Compare *Commissioner v. Noel's Estate,* 380 U.S. 678, 683–684 (1965). And pursuant to the statute, if a general power exists in the hands of a decedent at the date of his death, the property subject thereto is subject to the Federal estate tax. The only necessary relationship between the disclaimer provision and the imposi-tion of the estate tax caused by the existence of a general power at death is simply the lack of existence of the power if it has been disclaimed.

Cases cited by petitioner are inapposite to the question at issue. In the case of *Leon K. Camp, Executor v. United States,* an unreported case (D. Ga. 1965, 16 AFTR 2d 6154, 65–2 USTC par. 12,338), from which petitioner quoted a portion of the charge to the jury, the question involved was whether or

not the decedent, during her life, had accepted a general power of appointment prior to her purported disclaimer thereof in order to determine whether said disclaimer was effective under the provisions of section 2041(a)(2) and section 20.2041–3(d)(6), Estate Tax Regs. Nor is the dicta cited by petitioner from *Connecticut Bank & Trust Co. v. United States,* 465 F.2d 760 (2d Cir. 1972), of any precedential value herein. The issue in that case was whether or not a right of action for wrongful death constituted property over which the decedent had a general power of appointment. Pertinent hereto, the court stated that section 2041 was not intended to encompass a right of action for wrongful death and held that property subject to a power of appointment must be in existence prior to the time of the decedent's death. And finally, in the case of *Jenkins v. United States, supra,* an argument was made similar to the one petitioner argues herein, i.e., that the donee was not accorded an opportunity to disclaim the power. However, the court found that the donee was aware of the existence of and had a reasonable time within which to disclaim the power before her death.

More to the point is the case of *Estate of Bagley v. United States,* 443 F.2d 1266 (5th Cir. 1971), in which the court held the property subject to a general power of appointment to be includable in a donee's gross estate under section 2041(a)(2) even though the donor and donee, husband and wife, respectively, died in a common disaster under circumstances wherein it was impossible to determine the order of death. However, under the provisions of the husband's will his wife was presumed to have survived him. Obviously, under such circumstances the donee had no opportunity to disclaim her power of appointment yet the majority disagreed with what is nearly identical to the petitioner's argument herein (see dissenting opinion, Ainsworth, J., p. 1270) and found the donee held a general power of appointment taxable under section 2041(a)(2).

Furthermore, as petitioner concedes, the sole purpose for the provision contained in paragraph VII of the trust granting the decedent or his legally appointed guardian the power to terminate the trust and receive the corpus and accumulated income therefrom, i.e., the general power of appointment, was to insure that the gift of the corpus would qualify as a gift of a

*present interest* for purposes of the annual gift tax exclusion. See *Kieckhefer v. Commissioner,* 189 F.2d 118 (7th Cir. 1951), revg. 15 T.C. 111 (1950). The Federal estate and gift tax laws are in pari materia and must be construed together. *Sandford's Estate v. Commissioner,* 308 U.S. 39 (1939). Petitioner cannot prevail in his argument that for gift tax purposes the power received by decedent qualified as a present interest but for purposes of the estate tax decedent did not possess said power.

We hold that decedent at the date of his death possessed a general power of appointment over the assets of the James C. Freeman Trust and therefore the fair market value of said assets, $56,291.88, is includable in his gross estate. Accordingly,

*Decision will be entered for the respondent.*