ESTATE OF FANNIE ALPERSTEIN, DECEASED, ROSALIND A. GREENBERG, ADMINISTRATRIX, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 796–77.    Filed December 6, 1978.

*Albert B. Gins* and *Alan Prigal,* for the petitioner.
*Robert E. Marum,* for the respondent.

### OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $89,856.21 in the estate tax of the Estate of Fannie Alperstein. Certain issues having been settled by the parties, the sole issue remaining for decision is whether Fannie Alperstein, the decedent, possessed at her death a general power of appointment within the meaning of section 2041(a)(2).[1]

The facts have been stipulated.

Fannie Alperstein (sometimes hereinafter referred to as Fannie or the decedent), a resident of New York, died intestate on December 3, 1972. Her daughter, Rosalind A. Greenberg, who qualified as executrix of the estate, was a legal resident of New York when the petition was filed. The estate tax return was filed with the Internal Revenue Service Center, Holtsville, N. Y.

Decedent's husband, Harry Alperstein (Harry), died testate on

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect at the time of decedent's death, unless otherwise noted.

July 6, 1967. Article Fourth of his will, in pertinent part, is as follows:

> If my wife, FANNIE ALPERSTEIN, shall survive me, I give and bequeath unto my Trustees hereinafter named an amount equal to the difference between (a) one-half of the value of my adjusted gross estate and (b) the value of all property passing to my said wife under any other article or articles of this, my Will, or otherwise, and with respect to which a marital deduction is allowable to my estate under the provisions of the United States Internal Revenue Code, Section 812(e); my said Trustees shall hold the sum so bequeathed to them, IN TRUST, to pay to my said wife all the net income therefrom quarter-annually or at more frequent intervals during her life, and *upon her death she shall have the power by her last Will and Testament to appoint the entire principal of this trust fund then remaining in the hands of my said Trustees to her estate, free of any trust, or to or in trust for the benefit of anyone else.* [Emphasis added.]

If Fannie did not exercise the power of appointment conferred by this last clause, the unappointed property was to pass to Harry's children or their issue.

From the date of Harry's death through the date of her own death, Fannie lacked the requisite testamentary capacity to execute a will and she did not purport to exercise the power. On December 27, 1967, she was judicially declared to be incompetent to manage herself and her affairs, and her daughter, Rosalind A. Greenberg, was appointed as the committee of Fannie's person and property. That judicial declaration remained in effect until Fannie died.

The Federal estate tax return filed for decedent's estate reported that Fannie "at the time of death had a 50-percent interest in the estate of Harry Alperstein as legatee." Respondent argues that the full value of the property placed in trust by article Fourth of Harry's will was subject to the power of appointment given Fannie and is, therefore, includable in her gross estate under section 2041(a)(2). The parties have stipulated that if decedent possessed a testamentary power of appointment pursuant to article Fourth of Harry's will, decedent's gross estate will be increased by $242,167.15.

Section 2041(a)(2)[2] provides that a decedent's gross estate shall

---

[2]SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, * * *

include the value of "any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942." A "general power of appointment" is defined by section 2041(b)(1) as a "power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." The parties agree that the language of Harry's will was legally sufficient to confer on Fannie a general power of appointment within the meaning of section 2041(a)(2). The only issue is whether Fannie's mental incompetency, which deprived her of the legal capacity to exercise the testamentary power from the date of Harry's death to her own death, renders the section inapplicable. We hold that it does not.

The term "exercisable" as used in section 2041(b)(1) refers to the existence of the power in the decedent to appoint rather than to his or her capacity to exercise that power. Although Fannie was incompetent at Harry's death and so remained to the date of her own death, under New York law she could hold title to property and was, therefore, a permissible donee of the appointment power. N.Y. Est., Powers & Trusts Law sec. 10–4.1(a)(3) (McKinney 1967). There was the possibility that she would recover her competency and exercise the power by making a valid will. See *Miller v. Brinton*, 294 Ill. 177, 128 N.E. 370 (1920). New York law recognizes that a will made by a person who has been judicially declared insane is valid if, when the will was made, he had the testamentary capacity required by law in other cases. Cf. *In re Charap's Will*, 4 Misc. 2d 627, 140 N.Y.S.2d 92, 94 (N.Y. County Surr. Ct. 1955), affd. 286 App. Div. 1000, 145 N.Y.S.2d 311 (1st Dept. 1955); *In re Widmayer*, 74 App. Div. 336, 77 N.Y.S. 663, 664 (1st Dept. 1902); *In re Coe's Will*, 47 App. Div. 177, 62 N.Y.S. 376, 377 (3d Dept. 1900); *In re Hill's Will*, 73 N.Y.S.2d 258, 262 (Westchester County Surr. Ct. 1947), appeal dismissed 78 N.Y.S.2d 365 (2d Dept. 1948); *In re Lapham's Will*, 19 Misc. Rep. 71, 44 N.Y.S. 90, 93 (Oneida County Surr. Ct. 1896); 1 Page, Wills, sec. 12.42, pp. 650–651 (Bowe-Parker rev. 1960). Thus, it is clear that Fannie possessed the testamentary power at her death. At her death, the power terminated, and the property passed to Harry's children or their

issue. Fannie's possession of this exercisable power at her death is sufficient to require its inclusion in her estate.[3]

Numerous court decisions involving analogous factual situations show that the existence of a power to appoint within the meaning of section 2041(a)(2) is not dependent on the capacity of the decedent to exercise the power. Thus, in *Fish v. United States*, 432 F.2d 1278 (9th Cir. 1970), the decedent-wife, at the death of her husband, received a general power to appoint certain trust income. She was competent for 2 years and then became and remained incompetent until her death. She did not exercise the power, and it lapsed. The Government argued that the lapse constituted a release of the power within the meaning of section 2041(b)(2). That section provides that the value of the gross estate shall include the value of property to the extent of any property with respect to which the decedent has at any time "exercised or released" such a power of appointment by a disposition which is in the nature of a transfer of property. The estate of the decedent-wife argued that, because she was incompetent at her death, her failure to act did not constitute a release of the power. The court rejected that argument, stating (432 F.2d at 1280):

The precise manner of exercising or releasing the power is immaterial for purposes of determining taxability. Thus it is sufficient here that the power was released by its annual expiration or lapse, and it is immaterial whether the lapse occurred through a designed failure to exercise the power or through the indifference or incompetency of the decedent.

In *Estate of Bagley v. United States*, 443 F.2d 1266 (5th Cir. 1971), a husband and wife were killed in an automobile accident, and it could not be determined who survived the other. Effect was given to a provision in the husband's will that, in case of death in such circumstances, the wife would be deemed the survivor. His estate was allowed a marital deduction for property placed in trust, and his will gave his wife a power of appointment over such property. The wife's estate contended that the wife, under section 2041(a)(2), did not possess a power of appointment over the trust assets at the time of her death because her husband's will had not been admitted to probate.

---

[3]Fannie's death caused a transfer or shifting in relationships to property subject to the appointment power, and such a transfer or shifting in relationships to property is an appropriate occasion for the imposition of the estate tax. *U.S. Trust Co. v. Helvering*, 307 U.S. 57, 60 (1939).

Rejecting this argument on the ground that the process of probating a will is essentially a formal validation of the property interests which come into existence upon the death of the testator,[4] the court stated (443 F.2d at 1270):

> For the theoretical instant in which Mrs. Bagley survived her husband, the power of appointment created by the husband's will was exercisable. * * * the length of survival does not change the character of the property interest.

In *Pennsylvania Bank & Trust Co. v. United States*, 451 F.Supp. 1296 (W.D. Pa. 1978, 42 AFTR 2d 150, 583, 78–2 USTC par. 13,248, where the facts were very similar to those in the instant case, the court held that the facts that the decedent, Mrs. Brice, was incompetent when she acquired her power and did not regain her competency at any time prior to her death were irrelevant. The court stated (42 AFTR2d at 150,587, 78–2 USTC par. 13,248):

> Plaintiff argues that in the present case where Mrs. Brice's condition was hopeless and incurable a determination could have been made when Dr. Brice died that Mrs. Brice would never be able to competently exercise the power. Even though she had been adjudicated an incompetent, however, there was always the legal possibility that Mrs. Brice someday could regain her competency, or that she at least could have a lucid interval. Thus, as long as she lived it could not be assumed conclusively that she would not validly execute the power. [Fn. ref. omitted.]

To the same general effect, see *Jenkins v. United States*, 428 F.2d 538 (5th Cir. 1970) (power to appoint left by will to a sister who died 2 weeks later, prior to probate of the will); *Estate of Freeman v. Commissioner*, 67 T.C. 202 (1976) (decedent never saw the trust instrument and did not know he had the power of appointment).[5]

The cases relied upon by petitioner are distinguishable. In

---

[4]In *Commissioner v. Noel's Estate*, 380 U.S. 678 (1965), involving the includability under sec. 2042(2) of flight insurance proceeds, the decedent gave the policies to his wife and was killed in a plane crash. Under the terms of the policy the decedent retained powers to assign the policies and to change the beneficiaries. Holding that these powers were incidents of ownership, the Supreme Court said (at page 684):

"It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day-by-day, hour-by-hour capacity to dispose of property which he owns. We hold that estate tax liability for policies "with respect to which the decedent possessed at his death any of the incidents of ownership" depends on a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment."

[5]In *Hurd v. Commissioner*, 160 F.2d 610 (1st Cir. 1947), the court held that the decedent's power to alter, amend, or revoke a trust caused inclusion in the decedent's estate under the predecessor of sec. 2038 even though she became incompetent prior to her death. The court said (at page 613): "The

*Estate of Gilchrist v. Commissioner*, 69 T.C. 5 (1977), on appeal (5th Cir., June 20, 1978), a testamentary power was not involved. Rather the decedent by her husband's will was given "the income the use and benefits with full rights to sell or transfer all the remainder of my property, both real and personal, so long as she may live." After her husband died, decedent was declared incompetent and guardians of her person and estate were appointed. This Court held that decedent did not have a legal power to appoint to herself because she had been declared incompetent, and what powers she had could be exercised only by her guardians. Under Texas law, as it then stood, the guardians, as substitutes for decedent, could not exercise the power to consume or use the estate's property in the same manner as she could have had she been competent. They were limited to prescribed standards. On this ground the Court concluded that the decedent in that case did not possess a general power of appointment at her death. In contrast, the decedent in the instant case under New York law, as discussed above, in a lucid interval could have made a valid will, thereby exercising her testamentary power of appointment.

The facts in *Finley v. United States*, 404 F.Supp. 200 (S.D. Fla. 1975), were similar to the facts in the instant case, and the District Court concluded that the decedent in that case, because of her mental incompetence, did not have a section 2041 power. As we read the opinion, the District Court failed to distinguish the possession of an appointment power, as contemplated by section 2041(a)(2), from the ability to exercise such power. Nor did the District Court indicate whether under Florida law, which was apparently applicable in that case, an individual, though judicially declared incompetent, nonetheless may execute a valid will. As pointed out above, such a person in New York may hold a power of appointment and, during a lucid interval, validly execute a will. We think it clear, therefore, that the decedent in the instant case at her death possessed a general power of appointment over the disputed property.

To reflect the disposition of other issues,

*Decision will be entered under Rule 155.*

---

statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power."