493 F.Supp. 665 (1980)
William R. BOEVING, Leo Boeving and Charles M. Cable, Trustees of the Ethyle Boeving Trust; and Joan Boeving, Administratrix of the Ethyle Boeving Estate,
v.
UNITED STATES of America.
Civ. No. S78-0112C.
United States District Court, E. D. Missouri, Southeastern Division.
March 28, 1980.
*666 James E. Reeves, Ward & Reeves, Caruthersville, Mo., Charles Sampson Williams, Cable, Seabaugh & Williams, Kennett, Mo., for plaintiffs.
Robert D. Kingsland, U. S. Atty., St. Louis, Mo., James E. Crowe, Jr., Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on final submission of a claim for refund of a deficiency assessment, statutory penalty and interest on this amount levied against plaintiffs in the amount of $359,412.11.
The entity from which the estate tax liability in issue principally stems is the Estate of Ethyle Boeving. The William Boeving Trust, a transferee of assets deemed includable in the "gross estate" of the Estate of Ethyle Boeving, paid the disputed taxes. Most of the pertinent facts were stipulated by the parties in a Stipulation filed herein on November 12, 1979. The pertinent facts are as hereinafter stated.
Plaintiffs William R. Boeving, Leo Boeving, and Charles M. Cable were trustees of the Ethyle Boeving Trust, and plaintiff Joan Boeving is the administratrix of the Ethyle Boeving Estate. Ethyle Boeving died on September 13, 1973, and her estate was probated in the Probate Court of Butler County, Missouri. Plaintiffs William Boeving and Leo Boeving are the sole surviving trustees of the William Boeving Trust created under the Last Will and Testament of Albert Boeving.
Defendant is the United States of America and this action is for the recovery of federal estate taxes paid on behalf of The Ethyle Boeving Estate by the William Boeving Trust.
This Court has jurisdiction pursuant to the provisions of 28 U.S.C. § 1346(a).
Ethyle Boeving was the wife of Albert Boeving and, during their lives, both were residents of Butler County, Missouri. Ethyle was adjudicated an incompetent in the Probate Court of Butler County on December 1, 1960. Albert died testate on April 19, 1961. In his will, Albert made certain specific bequests, but the vast majority of his property passed to two trusts created in the residuary clause of his will. The two trusts were entitled the "Ethyle Boeving Trust" and the "William Boeving Trust." The Ethyle Boeving Trust was created, in part, to qualify the property passing into it for the marital deduction for federal estate tax purposes. To this end, Albert's will provided that Ethyle, his wife, would have the "absolute right to appoint by her last will and testament the entire remaining principal of . . . [the Ethyle Boeving Trust]." The will further provided as follows:
"In the event my wife, Ethyle Boeving, shall fail to exercise this power of appointment, the remaining principal of this trust and any undistributed income shall pass into the William R. Boeving Trust and be handled and distributed in accordance with the provisions thereof."
Ethyle died intestate on September 13, 1973. Accordingly, Ethyle did not exercise the power of appointment available to her under the terms of the Ethyle Boeving Trust. As a result, upon Ethyle's death the property remaining subject to that trust passed into the William Boeving Trust.
Subsequent to the filing of the original federal estate tax return on April 7, 1975, *667 the Internal Revenue Service determined that the Ethyle Boeving Trust property was, at her death, subject to Ethyle's power of appointment within the meaning of 26 U.S.C. § 2041, the Internal Revenue Code of 1954, and included that property in the gross estate for federal estate tax purposes.
William Boeving was the adopted son of Ethyle and Albert Boeving. After Ethyle was adjudicated incompetent on December 1, 1960, William was appointed guardian. William served in this capacity, although not satisfactorily, until December, 1972, at which time his wife Joan replaced him as guardian. Her husband had been an alcoholic since 1950, and suffered various physical ailments which required, among other things, treatment for mental disability. It was because of these problems that Joan was appointed guardian and administratrix for Ethyle Boeving and for Ethyle's estate after her death.
It is clear and it is stipulated that the resolution of this case depends on determination of two issues. The first issue is whether Ethyle Boeving, an adjudicated incompetent before the date of her husband's death, ever possessed a "power of appointment," within the meaning of that term under 26 U.S.C. § 2041, over the assets of the Ethyle Boeving Trust created by the will of Albert Boeving so as to require inclusion of the value of its assets in the Estate of Ethyle Boeving.
The second issue to be determined is whether the failure to timely file the federal estate tax return for Ethyle Boeving's Estate and to pay the federal estate tax was due to reasonable cause and not due to wilful neglect within the meaning of 26 U.S.C. § 6651(a)(1) and (a)(2) of the Internal Revenue Code of 1954 so as to render the Estate not liable for the penalty assessed under 26 U.S.C. § 6651.

I.
The federal estate tax is imposed upon the "taxable estate." 26 U.S.C. § 2001. The "taxable estate" is defined in the Internal Revenue Code as the "gross estate" less allowable deductions (e. g., the marital deduction). 26 U.S.C. §§ 2051 and 2056. The first step, then, in determining an estate's federal estate tax liability is to compute the "gross estate." This case involves that computation with respect to Ethyle Boeving's Estate.
Title 26 U.S.C. § 2031 broadly defines the "gross estate" as including "the value at the time of . . . [the decedent's] death of all property, real or personal, tangible or intangible, wherever situated." 26 U.S.C. § 2041 is one of the statutes which further describes the property comprising the "gross estate."
26 U.S.C. § 2041(a)(2) provides that the gross estate shall include the value of all property with respect to which the decedent has at the time of her death a "general power of appointment" created after October 21, 1942, whether or not the power has been exercised by the defendant. 26 U.S.C. § 2041(b)(1) defines the term "general power of appointment" as a "power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate." The testamentary power possessed by the decedent in the instant case appears to have been exercisable in such a manner on first impression, but the timing and effect of Ethyle Boeving's adjudication of incompetency, before the date of Albert Boeving's death, require a more detailed analysis of whether Ethyle died possessed of a general power of appointment or whether she ever became vested with such a power.
It has long been settled that state law creates legal interests and rights, while the federal Revenue Acts designate what interests or rights, so created, shall be taxed. Morgan v. Comm'r. Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). Under the law of Missouri, a power of appointment devised by will is a mere personal privilege. This narrow view is consonant with the New York holding on the issue. See In re: Buchanan's Trust, Sup., 142 N.Y.S.2d 502, 504 (Sup.1955), which cited In re: Erwin's Estate, Sur., 117 N.Y.S.2d 871, 873 (1952). The holding in *668 these cases, as adopted by the Missouri Court of Appeals in O'Leary v. McCarty, 492 S.W.2d 124 (Mo.App.1973), established that the power of appointment, as a personal privilege, vests the power in the donee who is the only person entitled to exercise such privilege. These cases also hold that "an adjudication of incompetency [has] an effect equivalent to the death of the holder of the power." O'Leary, supra, at 129. In this case it appears that when Ethyle's husband, Albert, attempted to give Ethyle a general power of appointment by will after his death on April 19, 1961, her prior adjudication as an incompetent by the Probate Court of Butler County, Missouri, on December 1, 1960, rendered the power of appointment a nullity.
Likewise, in Finley v. United States, 404 F.Supp. 200 (D.C.Fla.1975), the same result was obtained where the donee of a power of appointment was at all times from the devise of the power of appointment to her on October 18, 1971, to the time of her death, December 18, 1971, mentally incompetent and lacked the requisite testamentary capacity to execute a will.
Defendant asserts Joan had a power of appointment by drawing the analogy between an incompetent's capacity to exercise a power of appointment with the Missouri law relating to an incompetent's ability to execute a will. It is true that in Missouri, under King v. Gilson, 191 Mo. 307, 90 S.W. 367 (1905), an adjudicated incompetent may make a will on the theory that such a person may formulate the requisite testamentary intent as, for instance, during a lucid interval, if he is of sound mind at the time the will is executed. However, this analogy is not persuasive in view of the Missouri Appeals Court decision precisely on the point of capacity to exercise a power of appointment at issue in this case.
Further, one seeking to establish the competency of a testator who has been adjudicated incompetent bears the burden of overcoming the presumption of incompetency in the state of Missouri. King v. Gilson, supra. The Court is of the opinion that defendant has failed to overcome this presumption.
The evidence shows that Joan Boeving lived with the decedent, Ethyle Boeving, twenty-four hours a day for the last six years of her life. She lived in the same household with Ethyle, and had been acquainted with her and observed her from 1952 until the date of her death. Joan testified unequivocally to the bizarre behavior of Ethyle, and that in Joan's opinion, Ethyle did not ever have a rational moment. The only evidence offered by the Government on this issue was the testimony of Modella Peoples, a domestic servant in the Boeving home for less than a year at some point during the 1960s. The testimony offered by Ms. Peoples is not sufficient to overcome the presumption that Ethyle Boeving, the purported donee of the general power of appointment, was incompetent at all times from her receipt of the power of appointment until the date of her death. As such, the power never actually vested in her, and therefore, according to the terms of Albert Boeving's will, the residue of the Ethyle Boeving Trust should have passed to the William Boeving Trust on Albert's death and not have been taxed in the Ethyle Boeving Estate.
Defendant also attempts to challenge the personal nature of the power of appointment given to Ethyle by her husband's will by citing § 475.130(2), Mo.Rev.Stat. (1969), which provides:
"The guardian of the estate shall take possession of all the ward's real and personal property . . . whether accruing before or after his appointment, and of the proceeds arising from the sale, mortgage, lease or exchange thereof. Subject to such possession, the title to all such estate and to the increment and proceeds thereof, is in the ward and not in the guardian."
This argument is not persuasive in light of the O'Leary decision, which states unequivocally that the power of appointment is personal to the holder, and if any power of appointment could have been transferred to Ethyle, it is clear that only Ethyle could have exercised it. This is consistent with *669 the general holding that a power of appointment is not property or a property right or interest; rather, it is a personal privilege. 72 C.J.S. Powers § 1, p. 402.
Defendant cites numerous decisions from other jurisdictions which interpret 26 U.S.C. § 2041 to mean that the mere existence of the power to appoint in the decedent's behalf, rather than the ability of the decedent or anyone on the decedent's behalf to exercise such a power, controls the inclusion of property held subject to such a power in the decedent's gross estate. These cases do not control the Court's decision in this case because of the Supreme Court's holding in Morgan v. Comm'r. Internal Revenue, supra. Local law controls what powers are created under Albert Boeving's will; federal tax law controls the taxation of these powers. The differences in the results in the tax cases cited by defendant arise because each case turns on the crucial issue of what interest is created under local state law. Where Missouri law states clearly that Ethyle's adjudication of incompetency precluded her from ever even having an interest in the power of appointment which Albert attempted to leave her, there is no need to examine the case law of other jurisdictions nor the legislative history of 26 U.S.C. § 2041. Inquiry must be made solely as to whether decedent Ethyle Boeving possessed a general power of appointment at the time of her death under local law. This question must be answered in the negative.
Even if the power were not personal, assuming it could vest at all, the evidence shows that Ethyle's guardian, William Boeving, was de facto incompetent from 1950 through the dates of death of both Ethyle and Albert Boeving.
Thus, the Court finds that under applicable Missouri law the power of appointment created by Albert's will never vested in Ethyle, and thus the Ethyle Boeving Trust assets covered by the power should have passed to the William Boeving Trust. They should not have been taxed as part of the Ethyle Boeving Estate. Therefore, the deficiency assessment levied by the Government against the Ethyle Boeving Estate was improperly made. It is clear that plaintiffs are entitled to a refund in the amount of the assessment paid to the Government in May of 1978.
This assessment includes $67,275.88 in penalties imposed pursuant to the terms of 26 U.S.C. § 6651(b). This section provides that the penalty is to be imposed on the net amount due the Government. However, because the Court has determined that no additional amount was due, there can be no penalty imposed under the provisions of this section.

II.
Even if the deficiency assessment was properly levied, the evidence establishes beyond doubt that the delay which occurred in filing the Ethyle Boeving Estate tax return was due to "reasonable cause" and not due to "wilful neglect" within the meaning of 26 U.S.C. § 6651(a)(1) and (a)(2), so as to render the estate not liable for the penalty assessed under 26 U.S.C. § 6651(b).
26 U.S.C. § 6651 provides for the imposition of a penalty consisting of five percent of the amount of estate tax due in addition to the deficiency assessment itself against a taxpayer who fails to file an estate tax return. This penalty increases five percent each month up to a maximum of 25 percent. The penalty is mandatory unless the taxpayer shows that the failure to file on time was due to "reasonable cause" and not due to wilful neglect.
After reviewing the extensive and conflicting authorities cited by both parties on the issue of the reasonableness of Joan Boeving's delay in filing the estate tax return, one rule emerges consistently in each case which has dealt with the issue. It is stated succinctly in Gray v. United States of America, 453 F.Supp. 1356 (W.D.Mo. 1978), as: "If there is any rule to be gleaned from the comparison of these cases, it is that `reasonable cause' must be determined from all the facts in each particular case."
In this case, the Government assessed penalties in the amount of $67,275.88 *670 against the Estate of Ethyle Boeving for failure to timely file and pay the estate tax allegedly due. The tax was due on June 13, 1974, but the estate tax return was in fact filed on April 7, 1975. The Court finds that after a careful analysis of the circumstances leading up to the payment of the deficiency assessment, Joan Boeving, as administratrix of the Ethyle Boeving Estate, exercised ordinary business care and prudence in connection with her duties and, as such, her actions establish reasonable cause for delay within the meaning of 26 U.S.C. § 6651(a).
After Ethyle Boeving was declared incompetent on December 1, 1960, her adopted son William was appointed her guardian, and served in this capacity until December of 1972. William had a history of alcoholism and treatment for mental disorder, and his performance as guardian was totally unsatisfactory, requiring that his wife Joan take over his duties as guardian in December of 1972. She served in this capacity until Ethyle's death in September of 1973. Following Ethyle's death, Joan was appointed administratrix, a position which befell her due to the inability of her husband to perform his duties.
It is significant that Ethyle Boeving did not appoint Joan to serve as executor of her estate on the basis of Joan's business experience. Rather, when Ethyle died intestate, Joan was appointed administratrix, a position with which she had had no prior experience nor any background which would qualify her in any particular way to serve in this capacity. The record shows that Joan knew that an estate tax return would have to be filed, and that the position of administratrix encompassed certain responsibilities such as the filing of various documents. However, the record is even more clear that Joan, an unemployed rural housewife, had no business or financial experience, let alone any experience in the field of federal taxation.
Joan had never acted as an administratrix of an estate before her appointment as such for Ethyle Boeving's Estate, nor had she any occasion to file any federal estate tax returns or to assist in the preparation or filing of them. She never had any training, education, or experience with the IRS, and she had no knowledge of when a federal estate tax return would have to be filed. Her only source of income was the income she derived from her husband's trust.
In light of these circumstances, Joan's first act as administratrix was to hire attorney Charles Cable to represent the Estate of Ethyle Boeving. This act was certainly reasonable, even though Mr. Cable eventually filed a delinquent estate tax return. It is clear that Joan relied on Mr. Cable to prepare and file all necessary documents in connection with Ethyle's estate.
The filing of Ethyle Boeving's estate tax return was complicated by the death of Joseph L. Smith, the certified public accountant for the Boevings over a period of many years. Mr. Smith died on November 18, 1973, just two months after the death of Ethyle Boeving. Mr. Smith was intimately involved with the financial dealings of the Boeving family, and served as co-executor of the Albert Boeving Estate as well as co-trustee for both the William Boeving and Ethyle Boeving Trusts. Mr. Smith maintained all financial records pertaining to the personal income tax returns he prepared for the Boevings as well as the records which he kept in his position as co-executor and co-trustee.
After Mr. Smith's death, Charles Cable succeeded him in his capacity as co-trustee of the Boeving Trusts, but Mr. Cable labored under an honest mistake of law in that he believed the estate tax return for Ethyle Boeving was due one year after her death. In fact, it was due nine months after her death. Accordingly, just prior to the expiration of one year after Ethyle's death, Mr. Cable determined that he was in fact delinquent in paying the tax and immediately filed a letter requesting an extension of time in which to file the return, on September 12, 1974. Unfortunately, Mr. Cable died in early 1979 before this case came to trial.
Attorney Cable was unquestionably late in filing the return and is charged with responsibility for ascertaining the proper *671 filing date in performing his duties as attorney for the Estate of Ethyle Boeving. However, the law which changed the due date for filing federal estate tax returns was enacted in 1971, only two years before Ethyle's death. Prior to that time, the law established that the estate tax return was due fifteen months after the decedent's death. Section 101(a), Excise, Estate and Gift Tax Adjustment Act of 1970, P.L. 91-614, 84 Stat. (pt. 2) 1836.
Plaintiffs assert three reasons in support of their contention that Joan's delinquency was reasonable and that the estate should not be held liable for penalties. First, Joan obtained an experienced attorney immediately following her fortuitous appointment as administratrix, and relied on him to perform the various legal duties which he was in fact hired to do. This attorney's performance was hindered by the death of Joseph Smith. Secondly, Joan had no knowledge of what was required in filing a federal estate tax return, nor when such a return was due. Third, Mr. Cable was honestly mistaken as to when the return was due and acted prudently on learning of his mistake by filing a request for an extension of time within which to file the return. Plaintiffs further contend that Gray v. United States of America, supra, presents a similar factual setting in which the court held that a delinquent filing occasioned by the mistake of an attorney as to the due date did not give rise to wilful neglect on the part of the executor so as to justify the imposition of a penalty.
Defendant likewise offers three major reasons why the penalty should be imposed on the Ethyle Boeving Estate. First, Joan's reliance on Charles Cable was an unreasonable delegation of an executor's responsibilities to a third party, and as such does not constitute ordinary business care and prudence so as to excuse the delay in filing the return. In support of this contention, defendant cites United States v. Kroll, 547 F.2d 393 (7th Cir. 1977). That case is distinguishable from the case at bar because in Kroll, the executor, expressly appointed by a decedent by will and clearly more experienced in business affairs than Joan Boeving, knew that the attorney for the estate had not timely filed the estate tax return but took no affirmative steps to remedy the situation. In that case the court went on to reaffirm the general rule that the filing of an estate tax return is ultimately a nondelegable duty.
Certainly an executor or an administrator of an estate has a duty to perform his duties reasonably. However, in this case the Court finds that Joan's hiring of an attorney to handle the affairs of Ethyle Boeving's Estate was reasonable under the circumstances. It was certainly more reasonable than attempting to file the necessary documents for the estate herself, where she is a financially inexperienced housewife living in a rural community. It so happens that in this case, Joan picked an attorney who was mistaken as to the law relating to the time within which the estate tax return should have been filed. Without more, however, this act is not so unreasonable on her part as to justify the imposition of the Section 6651 penalty on her for the mistakes of her attorney.
The Gray court held that an executor's reliance on an attorney laboring under a similar filing deadline mistake was reasonable and stated:
"Unless the taxpayer knows when the return is due, he would have to delve into the Tax Code and its regulations to find out. It is this task that the taxpayer is paying the lawyer to perform."
Gray v. United States, supra at p. 1361.
Defendant further contends that Mrs. Boeving's failure to follow up on Mr. Cable's activities with respect to the estate tax shows wilful neglect in that the exercise of ordinary business care and prudence requires that one must make an inquiry into the steps being taken toward satisfaction of the estate tax responsibilities. Estate of Lammerts v. Comm'r., 456 F.2d 681 (2d Cir. 1972). This case is distinguishable because in Lammerts, the executors allowed an accountant and a lawyer each to assume that the other was preparing the estate tax return. Consequently, no return was filed *672 and a penalty was imposed. Also, the executors in that case were better acquainted with business affairs than Joan Boeving. The Court finds that this type of neglect is substantially more reprehensible than that experienced in the instant action.
Defendant also asserts an estoppel argument, claiming in essence that Joan's failure to submit the "reliance on counsel" defense in a sworn statement filed pursuant to the administrative procedures established by the Treasury Regulations on Procedure and Administration (1954 Code), § 301.6651-1(a)(1), precludes her from raising it in this case. This argument is not persuasive. As soon as Joan's attorney discovered his delinquency, he requested an extension of time in which to file the estate tax return. Further, when Cable filed his first request for refund on October 19, 1978, he stated his reasons for delay were that (1) the estate consisted of two complicated trusts with comingling assets, and (2) because of the death of a certified public accountant who was also a trustee, the estate could not locate adequate records to separate, identify, and appraise the assets within nine months of the date of death.
There can be no doubt that this is a complicated estate and trust situation and Smith's death just two months subsequent to that of Ethyle Boeving certainly lessened the chances for a timely filing. These substantive reasons for the inability to timely file appear sufficient in and of themselves to justify an extension of time within which to file the return. The mere fact that Mr. Cable did not include in his request for refund the fact that Joan was relying on him to know the proper filing date of the estate tax return and that he was mistaken as to this date is insignificant. Defendant cites no conclusive authority for the proposition that failure to raise a particular reason for a delinquent filing in an administrative procedure operates to bar the raising of that reason at a later date. The regulation itself does not support this estoppel argument. This contention is not well taken.
Defendant's second principal reason for imposing a penalty is that the death of Joseph Smith, occurring some two months after Ethyle's death and seven months prior to the filing date of the estate tax return, establishes that Joan was wilfully neglectful in allowing the due date to pass. This argument is not persuasive because Joan, a financially inexperienced housewife, took over as guardian for Ethyle just ten months before Ethyle's death. This guardianship was thrust upon her due to her husband's inability to perform. Further, Joan's appointment as administratrix was similarly thrust upon her and doubtless during this period she was learning for the first time the extensive and complicated responsibilities which had befallen her. The death of Mr. Smith at such a critical time during the computation of the Estate of Ethyle Boeving certainly must be taken into account in determining the reasonableness of the delay which occurred in the eventual filing of the estate tax return. It can hardly be said that Mr. Smith's death at such a critical period is insignificant.
Defendant's final major argument in support of the imposition of a penalty is the alleged wilful neglect as evidenced by a comparison of the estate inventory and estate tax return. Defendant contends that whatever problems were created by Mr. Smith's death with respect to records concerning Ethyle's estate were obviously resolved by March of 1974 when an inventory and appraisement of Ethyle's estate was filed in the Probate Court of Butler County. This assertion is raised because the property included in the inventory and appraisement contained all property ultimately included in the estate tax return which was filed on April 7, 1975. This argument once again attempts to impart to Joan the shortcomings of her attorney, hindered with the death of the only accountant intimately familiar with the Boevings' financial affairs.
The plain fact is that Mr. Cable honestly believed that certain assets should have been transferred to the William Boeving Trust which the Government subsequently contended should have been computed in the Ethyle Boeving Estate as being subject to an unexercised power of appointment *673 under the Ethyle Boeving Trust. It may well be that the assets in the inventory and final estate tax return were similar. However, during the period when the estate tax return was being drawn up, Mr. Cable had an honest legal question as to whether those assets would indeed be the same. When Ethyle's estate tax return was filed on April 7, 1975, the Ethyle Boeving Trust assets over which Ethyle held a purported power of appointment were transferred to the William Boeving Trust according to the terms of the Albert Boeving will. Had this not been done, the assets in the inventory as well as those filed on the federal estate tax return for Ethyle Boeving would presumably not have been the same. Indeed, the legal question of whether to include these assets in Ethyle Boeving's Estate or not is what gave rise to this lawsuit. In any event, it is patently unfair to penalize Joan for the legal determinations and tax computations of her attorney.
In view of all the facts in this case, the Court finds that the imposition of a penalty on Joan Boeving for wilful neglect in administering the Estate of Ethyle Boeving is unjust.
Accordingly, plaintiffs shall have judgment against defendant in the amount of the penalty assessed.
Therefore, in view of the stipulation filed in this action on November 12, 1979, plaintiffs shall have judgment against defendant and are entitled to a refund of the deficiency assessment and penalty paid by plaintiffs in May of 1978. The parties are directed to confer and draw up an exact amount of refund due to plaintiffs as of the date of this judgment within 30 days. A final judgment will be entered for the recomputed sum, inclusive of interest up to the date of judgment, at that time. If the parties are unable to agree, the Court may hear additional evidence on the issue of the amount of refund due and enter an appropriate judgment at that time.
Costs of bringing this action are awarded to plaintiffs.